OPINION OF THE COURT
Samuel Greenstein, J.
The motion to dismiss is decided as follows:
Plaintiff Amelia Reyes, together with her husband Jose Reyes, has sued her prior physician for alleged malpractice for insertion in 1973 of a Majzlin Spring Intrauterine Device (hereinafter known as IUD), a birth control device which was recalled at the medical level by the Federal Food and Drug Administration (F.D.A.), allegedly prior to the date of insertion. Plaintiff has also joined in this action as party defendants both the developer and the distributor of the Majzlin Spring.
Defendant physician has now moved to dismiss the action against him on the grounds that it is time barred under the Statute of Limitations, which the defendant has pleaded as an affirmative defense. Defendant contends that he inserted the IUD in November, 1972, prior to the recall by the F.D.A.; and that, regardless of when the device was inserted, the then three-year Statute of Limitations has long since run in either event, since the alleged malpractice, if any, occurred at the time of insertion.
*153 Plaintiff Amelia Reyes in opposition argues that the IUD was inserted in December, 1973; that the defendant never advised her at any time that the device had been recalled or should be removed; and that she had no way of knowing that the IUD was causing injury to her until her severe infection in 1978. According to the complaint, defendant advised Mrs. Reyes at the time of insertion that the IUD would be safe and effective and would be good for a period of at least five to six years; that Amelia Reyes began to experience severe radiating abdominal pain, infection, discharge and temperature in 1978, for which she was admitted to the hospital in January, 1979; that during said hospitalization she had to undergo surgery, including a complete hysterectomy and surgical removal of the IUD, all„ as a result of the unsafe birth control device.
The plaintiffs have attached as an exhibit to their opposing papers the F.D.A. News Release of May, 1973, which lists complications which can result from continued use of the Majzlin Spring, including the possibility that the device may have to be removed surgically, and warns that the chances of complications increase the longer the device is left in the body. Also submitted as an exhibit by plaintiffs is a copy of part of the pretrial examination of defendant, in which he states that he notified some of his patients regarding the continued use of said IUD, following the F.D.A. directive, of which he was apparently aware. Plaintiff wife denies receiving any such notification.
Plaintiffs’ allegations of medical malpractice are twofold: first, that the defendant was negligent in inserting the IUD originally (when it had already allegedly been recalled); and further, that he was negligent in later failing to inform the plaintiff wife that the IUD had been recalled and should be removed.
The court would note that it has before it only a motion to dismiss. There is no cross motion to dismiss the affirmative defense. Accordingly, the only issue before this court is whether, assuming the truth of the facts asserted in the complaint, the cause of action is time barred as a matter of law.
Regarding the failure to inform, this was a continuing omission on the part of the defendant which existed up to *154 the time that plaintiffs learned that the IUD had been recalled and/or should be removed, which was apparently sometime in 1978 to 1979. Plaintiffs would have had two and one-half years from the date of the omission to bring their action (CPLR 214-a). The complaint was served in July, 1979. As such, the motion to dismiss that part of the cause of action which relates to said failure to inform is denied.
In regard to the original insertion of the IUD, plaintiffs proceed under the theory that the IUD constituted a “foreign object” negligently inserted and/or left in the plaintiff wife’s body, so that the Statute of Limitations did not begin to run until the plaintiffs had or should have reasonably discovered the malpractice (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427). Under this theory, the applicable Statute of Limitations would be one year from the date of reasonable discovery (CPLR 214-a), which plaintiffs claim was sometime in 1978 to 1979. There is no claim by defendant that, if the one-year rule is applicable, the action was not brought within the permissible time period.
The general rule is that the Statute of Limitations begins to run at the time of the medical treatment when the foreign substance, e.g., a drug, is introduced into the body, and not at the time of discovery of the consequent injury or disease (Thornton v Roosevelt Hosp., 47 NY2d 780). There is an exception to this rule, however, in the instance of a foreign object negligently left in the body, in which circumstance the action accrues at the time of reasonable discovery of the foreign object and the malpractice (Flanagan v Mount Eden Gen. Hosp., supra). As the IUD is not a chemical compound, fixation device or prosthetic aid, it is not barred by statute from being classified as a foreign object, if appropriate (CPLR 214-a).
There are recent cases in the area which consider whether an IUD constitutes a foreign object. In Ooft v City of New York (104 Misc 2d 879, mod 80 AD2d 888) Justice Hirsch in Supreme Court, Kings County, found that an IUD constituted a foreign object, in a case in which the physician had failed to remove a first IUD when inserting a second one. Plaintiff, who allegedly did not know that the first IUD had not been removed, suffered complications *155 and underwent surgery, at which time the first IUD was found and removed. The fact pattern established a classic foreign object case, in which the patient is totally unaware of the presence of the foreign object left in the body initially. Justice Hirsch both denied the motion to dismiss and struck the affirmative defense of the Statute of Limitations. On appeal his order was modified to the extent of deleting the provision striking the affirmative defense of the Statute of Limitations.
Ooft (supra) is clearly distinguishable from the case herein. However, a recent decision by Justice Kirschenbaum in Supreme Court, New York County, in June, 1981, involving a Daikon Shield, another type of IUD, is more on point (Stein v Robins Co., NYLJ, June 23, 1981, p 4, col 4). In that case the IUD was inserted in 1972 and the plaintiff developed an infection in 1978 which necessitated surgery, allegedly because the IUD was defective. Justice Kirschenbaum examined the relevant case law at length and ultimately concluded that the cause of action accrued at the time of discovery rather than at the time of insertion.
Although the defendant in Stein (supra) was the manufacturer rather than the physician, much of the reasoning leading to the conclusion that the cause of action did not accrue until the time of discovery is applicable in the instant case. The facts are similar: there was no injury claimed to have occurred at the time of the insertion of the defective IUD; complications (i.e., actual injury) did not apparently occur until five or six years later; the probable causation for this injury (here the allegedly negligent insertion of the IUD) was not known to plaintiff until shortly after the time of injury (even though the presence of the IUD was known all along). Like Justice Kirschenbaum, this court finds that the policy considerations stated in Flanagan (supra) lead to the conclusion in such circumstances that the cause of action did not accrue until the reasonable discovery of the malpractice (here seemingly in 1978-1979). In addition, in this case, there was the alleged negligence of the defendant in failing to advise the plaintiff of the recall of the particular type of IUD, which continued up to the time of reasonable discovery.
*156 Accordingly, for all the reasons aforestated, the motion to dismiss is denied, without prejudice to defendant to assert and prove his affirmative defense.