■ YVONNE Ross, Individually and as Executrix of DENSIL Ross, Deceased, Appellant, v COMMUNITY GENERAL HOSPITAL OF SULLIVAN COUNTY et al., Respondents.—Levine J. Appeal from an order of the Supreme Court (Williams, J.), entered February 24, 1988 in Sullivan County, which, *inter alia,* granted defendants' motions for partial summary judgment.

Plaintiff was the wife of Densil Ross (hereinafter decedent), who died of metastasized lung cancer on December 10, 1982. Since the 1970's, decedent had been a patient of a group of physicians comprising defendant Liberty Medical Group, P. C. (hereinafter Liberty) for his general medical needs. On December 10, 1980, decedent consulted with defendant Alan M. Schwalb, a physician employee of Liberty, complaining of a cough, chills and a fever, at the emergency room of defendant Community General Hospital of Sullivan County (hereinafter the hospital). Schwalb examined defendant and concluded that he was suffering from the flu. Nevertheless, he ordered a chest X ray and blood work, pending receipt of which he discharged decedent with instructions to rest, drink fluids, take prescribed medication and call if his condition did not improve. Decedent's symptoms apparently subsided after a brief period and he did not call Schwalb.

About four days after the examination, Schwalb received a copy of the radiologist's report of decedent's chest X ray from the hospital. However, the copy was entirely illegible, if not blank, as to the radiologist's findings. Schwalb neglected to request a legible copy, although he conceded at an examination before trial (hereinafter EBT) that even if the radiologist had found no pathology, the report would not have been left blank, but would have explicitly so stated. Actually, a legible copy of the report would have revealed a finding of the existence of "a soft tissue density overlying the left anterior 5th rib, which could represent a lung lesion". The radiologist had recommended further X-ray studies to better identify the nature of the lesion. Schwalb further admitted at his EBT that, had he read the report, he would have ordered additional X rays.

Decedent's next contact with Liberty was on April 3, 1982 when he received treatment for a cold, cough and congestion from defendant Donald S. Roth. Roth diagnosed decedent's

condition as bronchitis and prescribed an antibiotic. Again, decedent apparently recovered and did not recontact any Liberty physician regarding that ailment. Roth stated at his EBT that he reviewed Liberty's records of decedent's prior medical treatment, but did not seek to obtain a legible copy of the December 1980 X-ray report.

In August 1982, while traveling with plaintiff abroad, decedent became ill, sought medical attention and, for the first time, was diagnosed as having lung cancer. On August 30, 1982, when visiting Schwalb for an unrelated scalp laceration, decedent informed Schwalb of his cancer. Plaintiff at that time enlisted Schwalb's help in getting decedent admitted to the Veteran's Administration Hospital in Albany and also asked Schwalb for a copy of the December 1980 chest X ray, so that it could be compared by the Veteran's Administration Hospital physicians. Schwalb then obtained a legible copy of the radiologist's report of the December 1980 X ray. He did not recontact plaintiff or decedent or otherwise respond to plaintiff's request. Decedent was also seen by a Liberty physician for his cancerous condition in October 1982.

Plaintiff commenced this malpractice action against Schwalb, Roth, Liberty (hereinafter collectively referred to as the physician defendants) and the hospital on about December 10, 1984, two years after decedent's death. Following extensive pretrial discovery, the physician defendants moved for partial summary judgment dismissing all causes of action arising out of the December 10, 1980 and April 3, 1982 treatments of decedent on the ground that they were barred by the 2½-year Statute of Limitations applicable to medical malpractice actions (CPLR 214-a). The hospital cross-moved for partial summary judgment on the same ground. Plaintiff opposed the motions and cross-moved for leave to amend her complaint to add causes of action for willful concealment against all defendants, simple negligence against the physician defendants and a demand for punitive damages. Supreme Court granted partial summary judgment in favor of all defendants dismissing plaintiff's second cause of action and dismissing plaintiff's first cause of action against the physician defendants, and denied plaintiff's cross motion to amend. This appeal by plaintiff ensued.

Initially, we agree with Supreme Court that defendants' Statute of Limitations defense was not overcome either under the continuous treatment doctrine or on the theory that defendants were under a continuing duty to disclose the existence of the lesion on decedent's lung, the breach of which

continued until August 1982 when decedent otherwise learned that he had cancer. The evidence admits of no other conclusion than that decedent's treatments by the physician defendants on December 10, 1980 and April 3, 1982 were considered and contemplated by both physician and patient as discrete transactions of medical services, in each of which defendant was diagnosed as having a temporary respiratory disease of finite existence, and discharged as cured. Even if both ailments had an underlying relationship to the lung cancer which was not timely diagnosed as a result of the physician defendants' alleged malpractice, the facts do not fall within the rationale of the continuous treatment doctrine. As most recently reiterated in *Rizk v Cohen* (73 NY2d 98), the doctrine is designed only to avoid the dilemma faced by a patient who is under ongoing treatment for the same condition from the offending physician, "who must choose between silently accepting continued corrective treatment * * * with the risk that his claim will be time-barred or promptly instituting an action, with the risk that the physician-patient relationship will be destroyed" *(supra,* at 104). Thus, it is not sufficient to satisfy the continuous treatment doctrine that the patient reposes general trust and confidence in the physician and, but for the misdiagnosis, further treatment would have been prescribed *(supra,* at 102-103). On each of the visits of December 1980 and April 1982, decedent and the physician defendants did not contemplate further treatment or consider that it was necessary.

The case of *Rizk v Cohen (supra)* also effectively disposes of plaintiff's alternative contention that the period of limitation did not commence to run until August 1982 because the physician defendants had a continuing duty of disclosure of the existence of the lesion found on decedent's lung. However, in arguing for the imposition of such a duty to disclose, plaintiff points only to the continuous existence of a doctor-patient relationship and the continuing nature of the misdiagnosis, factors which, alone, are not legally sufficient to extend the period of limitations *(see, supra,* at 103).

Despite the absence of a legal ground to toll or otherwise extend the running of the Statute of Limitations, summary judgment dismissing as untimely the causes of action based upon the December 10, 1980 and April 3, 1982 treatments was nevertheless unwarranted, because plaintiff's evidence created an issue of fact as to whether the physician defendants are equitably estopped from raising that defense. As previously described, there was proof that, in August 1982, still within

the period of limitations, Schwalb obtained a legible copy of the December 1980 chest X-ray report in response to plaintiff's inquiry. Thus Schwalb, for the first time, became aware that a lesion, potentially cancerous, was overlooked by him in failing promptly to pursue the actual results of the X ray he had ordered. Nevertheless, according to plaintiff's submissions, Schwalb failed to notify plaintiff either that the lesion was revealed in the 1980 X ray or that he had not followed up on the illegible report. This evidence could readily support an inference that Schwalb intentionally concealed these facts and, indeed, implicitly misrepresented that nothing of significance was contained in the 1980 X ray that plaintiff requested, in order to forestall the timely commencement of a suit for malpractice. Such an inference would satisfy the key element giving rise to an estoppel from asserting a Statute of Limitations defense *(see, Simcuski v Saeli,* 44 NY2d 442, 448-449; *Renda v Frazer,* 75 AD2d 490, 495). Because of the fiduciary relationship between physician and patient, in which confidence is normally reposed in the integrity of one's physician, intentional concealment of material facts itself may be sufficient to create an estoppel *(Jordan v Ford Motor Co.,* 73 AD2d 422, 424) and also to support an inference of the patient's reliance *(Simcuski v Saeli, supra,* at 449).

Plaintiff first learned of the actual content of the 1980 X-ray report on July 28, 1983, after the Statute of Limitations had already run on the alleged December 1980 malpractice. Moreover, it was not until this action was commenced that plaintiff discovered that the radiologist's report initially sent to the physician defendants was blank or illegible and of their failure promptly to obtain a readable copy. Under these circumstances, it cannot be said, as a matter of law, that plaintiff failed to exercise due diligence in pursuing her claim within a reasonable time after discovery of the operational facts, a further element of estoppel that she has the burden of establishing *(supra,* at 449-451). Accordingly, these outstanding factual issues pertinent to whether the physician defendants are equitably estopped from asserting the defense of the Statute of Limitations precludes summary judgment.

That a triable issue exists as to whether the physician defendants are estopped from asserting the defense of the Statute of Limitations on the basis of fraudulent concealment does not, however, require reversal of Supreme Court's ruling denying plaintiff leave to amend the complaint to assert a fraud cause of action based upon the same facts. The concealment here, if any, occurred in August 1982, when plaintiff and

decedent were already aware that decedent had cancer and he was under treatment therefor. Thus, it cannot be inferred that any intentional failure to disclose by the physician defendants at that time deprived decedent of the opportunity for cure of his condition (cf., supra, at 452). Nor has plaintiff submitted any proof that any concealment of the true facts in August 1982 increased decedent's injuries or expenses or otherwise affected the damages recoverable. Accordingly, the proposed fraud claim alleges nothing more than the physician defendants' concealment of their own malpractice, which alone does not give rise to a cause of action for fraud or deceit separate from the customary action in malpractice (see, supra, at 452).

Absent a separate cause of action for fraud, the complaint does not allege conduct on the part of the physician defendants so grossly wanton or otherwise morally culpable as to justify any award against them for punitive damages, and there is even less of a basis for such an award against the hospital. Thus, Supreme Court properly denied plaintiff's request for leave to add a demand for punitive damages to her complaint (see, Gravitt v Newman, 114 AD2d 1000, 1002).

Supreme Court also correctly denied plaintiff's request for permission to amend the complaint by adding a negligence cause of action against the physician defendants. The breach of duty alleged by plaintiff, i.e., the failure to request the legible radiologist's report, arose out of and is inextricably intertwined with the rendition of professional medical treatment by the physician defendants and, thus, sounds in malpractice rather than negligence (see, Bleiler v Bodnar, 65 NY2d 65, 72; Stanley v Lebetkin, 123 AD2d 854; Lenny v Loehmann, 78 AD2d 813, 814).

Order modified, on the law, without costs, by reversing so much thereof as granted partial summary judgment dismissing plaintiff's first and second causes of action against defendants Liberty Medical Group, P. C., Alan M. Schwalb and Donald S. Roth; motion for partial summary judgment by said defendants denied; and, as so modified, affirmed. Kane, J. P., Casey, Weiss, Levine and Mercure, JJ., concur.