**Andree Walton HOEMKE, Plaintiff,**

**v.**

**NEW YORK BLOOD CENTER, New York Hospital–Cornell Medical Center, John Rodman, John McGovern, Thomas McGovern and John Coleman, Defendants.**

**No. 88 Civ. 9029.**

United States District Court, S.D. New York.

Sept. 20, 1989.

Witherspoon & Grayson, San Francisco, Cal. (V. Elizabeth Grayson, of counsel), for plaintiff.

Curtis, Mallet–Prevost, Colt & Mosle, New York City (Jan Marcantonio, of counsel), for defendants.

OWEN, District Judge:

Andree Walton Hoemke, a forty-six year old woman who allegedly contracted AIDS from a blood transfusion she received in November, 1981, during kidney stone surgery at defendant New York Hospital ("Hospital"), brought this diversity suit against her treating physicians, the Hospital, and the Hospital's blood bank. Discharged from the Hospital in December, 1981, Ms. Hoemke last received follow-up care from the defendant doctors, at their group offices, in August, 1982. Symptoms of AIDS began appearing in April, 1986, but remained undiagnosed until March, 1987. In December, 1988, Ms. Hoemke grew increasingly ill and filed this suit.

In this suit, plaintiff charges the defendants with medical malpractice, negligence, failure to obtain informed consent, fraud, breach of fiduciary duty, and infliction of emotional distress. Ms. Hoemke's treating physicians, defendants John Rodman, John McGovern, Thomas McGovern and John Coleman, allegedly erred in ordering an unnecessary transfusion, drawn from defendant New York Blood Center ("Blood Center"), the Hospital's regular supplier.

In addition, plaintiff claims, both the Hospital and the Blood Center negligently failed to take certain measures to prevent the spread of blood-borne diseases.

The defendant doctors move to dismiss plaintiff's claims, arguing that the statute of limitations bars plaintiffs medical malpractice and informed consent claims. Under New York law, Civ.Prac.L. & R. 214–a, the statute of limitations for medical malpractice and informed consent claims is 2½ years from the date of injury.[1] Because plaintiff cannot show continuous treatment or other grounds for delayed accrual, she must show that the doctors' fraudulent concealment or failure to inform plaintiff of her condition estops them from pleading the statute. Plaintiff has neither alleged nor shown that the doctors' post-treatment conduct amounted to fraudulent concealment.

■ Under the fraudulent concealment doctrine, a defendant is estopped from pleading the statute of limitations only if, before the statute had run, the doctor knew of the alleged malpractice and intentionally concealed it from the patient, inducing reliance and forbearance from suit. *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259 (1978); *see Rizk v. Cohen*, 73 N.Y.2d 98, 538 N.Y.S.2d 229 (1989); *Ross v. Community General Hosp.*, 541 N.Y.S.2d 246 (App.Div. 3d Dept.1989).

In *Simcuski*, the Court of Appeals reversed dismissal of plaintiff's medical malpractice action as time-barred, because plaintiff adequately alleged that her physician "was aware of the negligent manner in which he had performed the surgery and aware, too, that as a result of his negligence plaintiff had suffered a potentially

---

1. For statute of limitations purposes, a doctor's failure to obtain informed consent is characterized as medical malpractice. *See, e.g., Williams v. Cordice*, 100 Misc.2d 425, 418 N.Y.S.2d 995, 997 (Sup.Ct.1979) (citing *Murriello v. Crapotta*, 51 A.D.2d 381, 382, 382 N.Y.S.2d 513, 514 (App. Div. 2d Dept.1976)). Although there is some question as to whether a claim based on a physician's failure to obtain informed consent might come within the one-year statute of limitations for assault or battery, such analysis would not alter the fate of plaintiff's six year old claim. Similarly, plaintiff's claim would still be time-barrred under the three year negligence statute, were that statute to apply. *See Bleilar v. Bodnar*, 65 N.Y.2d 65, 489 N.Y.S.2d 885, 479 N.E.2d 230 (1985) (drawing distinction between administrative negligence and medical malpractice on the basis of whether the alleged omission constituted a "crucial element of diagnosis and treatment"). The new discovery accrual rule for toxic "exposure" statute would not apply to a negligence action arising not out of the exposure but out of the failure to inform. *See* N.Y.Civ.Prac.L. & R. 214–c.

permanent injury," but, when plaintiff confronted him, the doctor willfully and fraudulently denied the severity of the injury and the need for corrective treatment. 44 N.Y.2d at 447, 406 N.Y.S.2d 261, 377 N.E.2d 715. In *Ross*, the defendant doctor deliberately failed to respond to plaintiff's decedent's specific request to view a previously neglected X ray, which at a minimum suggested lung cancer, all creating a triable issue of fact as to whether the doctor should be estopped from pleading the statute of limitations. 541 N.Y.S.2d at 249.

■ Plaintiff has not introduced any evidence from which a jury might infer that her doctors knew of their alleged malpractice and resultant injury to plaintiff, but intentionally concealed this fact from plaintiff, as New York law requires. Instead, plaintiff argues that after treatment but before the statute had run, her doctors knew and failed to warn her "of the danger of transfusion AIDS...." However, the failure to warn of a *danger* discovered after treatment is not the same as a failure to warn of a *known malpractice*. In this case, the doctors' alleged malpractice consisted of giving plaintiff an unnecessary, poorly screened or tested transfusion; there is no allegation or evidence that the doctors knew that they had committed such malpractice, or that they knew that the transfusion gave plaintiff AIDS, or that they denied such knowledge when asked. Absent such knowledge, the fraudulent concealment doctrine cannot save plaintiff's time barred medical malpractice claims. Accordingly, plaintiff's third cause of action, alleging medical malpractice, and the fourth claim, alleging failure to obtain informed consent, must be dismissed. For the same reasons that the fraudulent concealment claim fails, plaintiff's fraud claim against her doctors must also be dismissed, because the alleged facts, even if true, do not amount to fraud.

■ Plaintiff has also failed to state a cause of action for breach of fiduciary duty, or infliction of emotional distress. Plaintiff's breach of fiduciary claim charges that when her doctors finally learned in 1982 that blood transfusions could spread AIDS, they ought to have contacted plaintiff and warned her that she might have contracted the disease. Plaintiff claims that her doctors' alleged breach of this duty deprived plaintiff of the ability to make informed decisions about her future health care needs, including prospective insurance coverage.

Although the special confidence and care between a patient and physician imposes on the physician heightened fiduciary duties, *see Simcuski*, 44 N.Y.2d at 450, 406 N.Y.S.2d at 263, doctors are not required to contact and inform past patients of merely possible harms from treatment that they did not know was negligent or harmful. The fraudulent concealment cases carefully avoid creating such a duty. *See Rizk*, 73 N.Y.2d at 105–06, 538 N.Y.S.2d at 233; *Ross*, 541 N.Y.S.2d at 249. Although one lower New York court denied a motion to dismiss a cause of action against a doctor who failed to notify a patient that the F.D.A. had recalled her form of IUD's, and that it should be removed, I note that the doctor allegedly also had been negligent in prescribing that IUD in the first place, and his failure to contact his patient, in light of the F.D.A. order, was deemed a "continuing omission." *Reyes v. Anka Research, Ltd.*, 111 Misc.2d 152, 443 N.Y.S.2d 595 (Sup.Ct.1981).

Absent such extraordinary circumstances, New York law does not impose a general duty on doctors to notify their past patients of every current medical discovery that may throw some doubt, however slight, on the plaintiff's condition or treatment. In this instance, for example, such a rule would have required the defendant doctors to contact every patient whom they had transfused over an indefinite period of time, perhaps as much as ten years, amounting to thousands or perhaps tens of thousands of calls. Each of these calls obviously could inflict terrible, permanent harm on every patient, since the doctors would have had to tell them all that they might have AIDS, at a time when the likelihood of their actually having been infected was entirely unknown, and when there was no AIDS test that would permit them to

seek treatment or that would dispel the fear that such a call must engender. Clearly the defendants breached no duty to their patients when they declined to needlessly terrorize them about AIDS. Having breached no duty, the defendants may not be held liable for infliction of emotional distress.

The third, fourth and sixth causes of action are dismissed. No claims remaining against the doctor defendants, the action is dismissed as to them.

So ordered.