The **RADIOLOGY CENTER, S.C.** and
Enrique Schwarz, M.D.,
Plaintiffs–Appellants,

v.

**STIFEL, NICOLAUS & COMPANY** and
Robert F. Shields,
Defendants–Appellees.

No. 89–3047.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1990.

Decided Nov. 29, 1990.

William P. Caputo, Lionel G. Gross, Altheimer & Gray, Chicago, Ill., for plaintiffs-appellants.

Joan M. Fencik, James A. Christman, Wildman, Harrold, Allen & Dixon, David W. Gleicher, Chicago, Ill., Thomas E. Douglass, Ellen E. Bonacorsi, Charles Wayne Primm, Coburn, Croft & Putzell, St. Louis, Mo., for defendants-appellees.

Before POSNER and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

Plaintiffs Enrique Schwarz and Radiology Center brought suit against their stockbroker, defendant Robert Shields, and his employer, defendant Stifel, Nicolaus & Company. In their suit, Schwarz and Radiology Center allege a variety of federal and state securities violations, breach of fiduciary duties owed under ERISA and state law, and breach of contract. On defendants' motion for summary judgment, the district court held the federal securities and ERISA claims to be barred by the applicable statutory limitations periods, and dismissed the pendent state law claims for lack of subject matter jurisdiction. Because we disagree with the district court's interpretation of the accrual principles applicable to the ERISA statute of limitations, we reverse its grant of summary judgment to defendants on the ERISA claims. We also vacate the district court's grant of summary judgment to defendants on the § 10(b) claim and remand for reconsideration in light of a recent Seventh Circuit decision on the statute of limitations to be applied in § 10(b) actions.

I. FACTS AND PRIOR PROCEEDINGS

Enrique Schwarz is a radiologist who practices in the Chicago area and is president of Radiology Center. In May, 1981, Radiology Center entered into a brokerage agreement with Robert Shields ("Shields"), a stockbroker and vice-president of defendant Stifel, Nicolaus & Company ("Stifel"), a securities brokerage house. Under the agreement, Shields agreed to direct the investment of the funds in Radiology Center's Profit–Sharing Plan. In December, 1981, Schwarz and Shields entered into a second agreement, this one providing for Shields' management of Schwarz's Keogh Plan. Schwarz asked Shields to invest the funds in both plans in low-risk securities. Aside from this instruction, however, Shields' choice of securities or his decisions to buy or sell individual securities was largely unrestricted.

Shields began to purchase and sell securities, mainly common stock, on behalf of both accounts. He sent Schwarz confirmation slips after each trade, showing the security traded, the number of shares purchased or sold, and the price per share. For trades executed on behalf of his Keogh Plan, Schwarz returned signed copies of the confirmation slips to Stifel. In addition to the confirmation slips, Shields received monthly account statements that summarized activity for the preceding month, showing securities purchased or sold, the number of shares of each issuer that were purchased or sold, and the amount charged or credited to the relevant account because of each purchase or sale. Schwarz also received annual statements in July of 1982 and 1983 summarizing account activity in the preceding twelve-month period ending on June 30. These annual summaries showed the value of funds remaining in each account at the end of the fiscal year.

The 1981–82 annual report showed that the accounts had been profitable. The 1982–83 report, however, showed substantial losses. In September, 1983, Schwarz for the first time directed that Shields purchase particular securities, Erickson and Atcor common stock. Two weeks after Shields purchased Atcor, he sold it. Schwarz discovered that Shields had sold Atcor about two weeks after the sale. He later admitted that the Atcor sale changed his opinion of Shields' management of the accounts. All trading in both accounts ceased after September, 1983 except for one purchase of government securities in early 1984 which plaintiffs do not contest. In July, 1984, Schwarz directed Shields to sell all securities held in the Profit Sharing Plan account. In September of that year, Schwarz directed Shields to transfer the Keogh account to another brokerage.

In December, 1986, more than three years after Shields' last disputed trade on behalf on the two accounts, Schwarz and Radiology Center brought suit in the district court. They alleged that Shields and Stifel had violated § 10(b) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5 by (1) misrepresenting the type of securities that Shields would purchase for the accounts; (2) executing unauthorized trades; and (3) churning both accounts. They also alleged that these activities constituted a breach of the fiduciary duty imposed on employee-benefits plan managers under § 409(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1109(a). In addition, they alleged that defendants violated § 17(a) of the Securities Act of 1933, § 15 U.S.C. § 77q.[1] Plaintiffs also alleged three state law claims: violations of Illinois securities law, breach of contract, and intentional misrepresentation.

Following discovery, defendants moved for summary judgment on the ground that both the ERISA and § 10(b) claims were barred by the applicable statutes of limitations. According to defendants, plaintiffs had actual or constructive knowledge of defendants' alleged securities fraud no later than September, 1983, more than three years before plaintiffs filed suit. Consistent with the law in this Circuit at the time, the district court applied the three-year limitations period provided for under Illinois state securities law, Ill.Ann.Stat. ch. 121½, ¶ 137.13(D) (Smith–Hurd 1960 & Supp.1990). Defendants also contended that, because in their view plaintiffs had actual knowledge of the facts giving rise to their ERISA claim by September, 1983, this claim was governed—and barred—by the three-year statute of limitations provided for in ERISA § 413, 29 U.S.C. § 1113.

Plaintiffs responded that Schwarz was an unsophisticated investor who trusted Shields and thought that Shields would respect his wishes concerning the kinds of securities to be purchased with funds from the accounts. Furthermore, plaintiffs asserted that Shields misled Schwarz concerning the reason for the losses in the accounts and delayed Schwarz's discovery that he might have securities claims by lulling him into inaction with the promise

of better times ahead. Plaintiffs fix the time at which Schwarz learned of the wrongs Shields committed in June, 1984, when Schwarz had a different broker review the trades Shields had entered into on Schwarz's behalf.

The district court granted summary judgment on both the § 10(b) claims and the ERISA claim. As to the § 10(b) claims, the district court defined the point at which the statute of limitations begins to run as the moment when "a plaintiff either has actual knowledge of the violation or notice of facts which, in the exercise of reasonable diligence, would lead to actual knowledge." Memorandum Opinion ("Mem. Op.") at 5. Furthermore, the district judge determined that the inquiry into when a plaintiff could, in the exercise of reasonable diligence, have discovered the facts that would lead to actual knowledge is an objective one. Mem. Op. at 6 (citing *Norris v. Wirtz*, 818 F.2d 1329, 1334 (7th Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987)).

Applying this standard to the facts, the district court concluded that Schwarz had at least constructive knowledge of Shields' unauthorized trading by September, 1983, the time of the last disputed trade. The district court based this conclusion on the facts that: (1) Schwarz received confirmation slips following each trade; (2) he acknowledged receipt of these slips, some of which—those related to the Keogh account—he returned to Stifel with his signature; and (3) he admitted reviewing the monthly statements Stifel provided, statements that contained recapitulations of monthly trading activity.

As to Schwarz's allegation that Shields disobeyed his instruction to invest funds from the accounts only in good quality stocks, the district court again found that Schwarz had knowledge of the facts supporting this violation of securities laws by September, 1983. The basis the district court identified for this conclusion was

---

**1.** Plaintiffs withdrew their § 17(a) claim following this Court's decision in *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 942–43 (7th Cir.1989), in which we held that there is no private right of action under § 17(a).

Schwarz's admission that he was unfamiliar with the names of the issuers that he saw listed in the monthly statements and could not find these issuers listed in newspaper stock tables. According to the district court, the fact that Schwarz "could not find the name of *any* stock traded in the accounts would put a reasonable person on notice that the stocks purchased might not be low risk securities...." Mem. Op. at 9. The district court supported this conclusion by noting that Schwarz admitted that his review of the 1982–83 annual statement led him to suspect that the securities Shields was purchasing on his behalf were not secure investments.

With respect to the churning allegation, here, too, the district court found that Schwarz had knowledge of Shields' frequent trades in September, 1983 at the latest. The basis for this finding was Schwarz's admission that he detected evidence of churning in late September, 1983, when Shields sold the Atcor shares Schwarz had selected. Concluding that "the undisputed facts demonstrate that, no later than September, 1983, plaintiffs were aware of the manner in which the trades were made, the trading pattern, and the quality of the securities purchased," Mem. Op. at 12, the district court granted defendants summary judgment on the § 10(b) claims.

When it turned to the ERISA claim, the district court applied the three-year ERISA statute of limitations contained in 29 U.S.C. § 1113 and observed that the "level of knowledge required to start the running of the limitations period under § 1113 involves an analysis similar to that involved in determining requisite knowledge under" the securities laws. Mem. Op. at 16. The district court read § 1113 to mean that the three-year statute of limitations applied "if the defendant can show that the plaintiff had *either actual or constructive knowledge* of the breach or violation; the three-year period runs from the time plaintiff gained such knowledge." *Id.* (emphasis supplied) (citing *Brock v. TIC Int'l Corp.*, 785 F.2d 168 (7th Cir.1986)). Having previously found that by September 1983 plaintiffs had knowledge of facts which, in the exercise of reasonable diligence would have led them to recognize that they had a claim under the securities laws, the district court granted defendants summary judgment with respect to the ERISA claim as well. Having disposed of all of plaintiff's federal claims, the district court dismissed the pendent state claims as well.

## II. THE ERISA CLAIM

Plaintiffs appeal the grant of summary judgment as to both the ERISA claims and the § 10(b) claims. As to the ERISA claims, plaintiffs contend first that the district court applied the wrong limitations period when it chose to apply the three-year period rather than the six-year period 29 U.S.C. § 1113 makes applicable "in the case of fraud or concealment." Alternatively, they argue that the district court erred in importing the level of knowledge needed to accrue the running of the limitations period under the Illinois securities fraud statute of limitations then applicable to the § 10(b) claims into its analysis of the level of knowledge needed to trigger the federal limitations period applicable to the ERISA claim. According to plaintiffs, while constructive knowledge of the facts giving rise to a fraud claim is sufficient to accrue the three-year limitations period in an Illinois securities fraud case, the ERISA statute requires actual knowledge of these facts; plaintiffs contend that they did not possess actual knowledge until mid–1984, less than three years before they filed suit. Defendants respond that plaintiffs had actual knowledge of the facts giving rise to their ERISA cause of action by September, 1983, barring their claim under the three-year statute of limitations they view as applicable.

### A. The Applicable Limitations Period

ERISA § 409 provides that any plan fiduciary who breaches her fiduciary duties shall be personally liable to account to the plan for damages arising from the breach. 29 U.S.C. § 1109. ERISA § 413, 29 U.S.C. § 1113, limits the time in which an action against a plan fiduciary for breach of fidu-

ciary duties may be brought. Section 1113 provides as follows:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Plaintiffs argue that the limitations period applicable to their action is the six-year period that the last clause of § 1113 provides shall be applied "in the case of fraud or concealment." They contend that since the underlying conduct giving rise to their ERISA claim is securities fraud, theirs is a case of "fraud or concealment" within the meaning of § 1113.

 The question of whether the phrase "in case of fraud or concealment" in § 1113 should be construed as referring to the nature of the factual allegations supporting the claim for breach of fiduciary duty, as plaintiffs contend, or to steps taken by wrongdoing fiduciaries to cover their tracks, as defendants assert, is one that has divided courts. *Compare Diduck v. Kaszycki & Sons Contractors,* 874 F.2d 912, 919 (2d Cir.1989), *with Farrell v. Automobile Club,* 870 F.2d 1129, 1131 (6th Cir.1989) *and Schaefer v. Arkansas Medical Soc'y,* 853 F.2d 1487, 1491 (8th Cir. 1988). We conclude that the better view is that the phrase refers to steps taken by the defendant to hide the fact of the breach rather than to the underlying nature of plaintiffs' claim.

We read the phrase "fraud or concealment" in light of the "familiar principle of statutory construction that words grouped in a list should be given a related meaning," *Schreiber v. Burlington Northern, Inc.,* 472 U.S. 1, 8, 105 S.Ct. 2458, 2462, 86 L.Ed.2d 1, 7 (1985); *see* 2A C. Sands, Sutherland Statutory Construction § 47.16 (4th ed. 1984). If, as plaintiffs argue, the term "fraud" in the phrase "fraud or concealment" referred to the legal claim creating the breach of fiduciary duty, one would also expect that the six-year limitations period would be applicable to an action for breaches of fiduciary duty caused by "concealment." The problem with this reading is that it fails to give effect to the word "concealment": there is no recognized legal cause of action for "concealment," either now or when ERISA was enacted. The reading we adopt, by contrast, interprets the phrase "fraud or concealment" in a way that gives both terms meaning. An ERISA fiduciary can delay a wronged beneficiary's discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary never becomes aware of them (concealment).

Moreover, this interpretation of "fraud or concealment" harmonizes the phrase's meaning with the widely known doctrine of *fraudulent* concealment, which tolls the running of a statute of limitations when the defendant has prevented the plaintiff's timely discovery of the wrong she has suffered. *See, e.g., Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1493–94 (D.C. Cir.1989); *Shane v. Shane,* 891 F.2d 976, 985 (1st Cir.1989); *E.W. French & Sons v. General Portland Inc.,* 885 F.2d 1392, 1400 (9th Cir.1989); *Hoemke v. New York Blood Center,* 720 F.Supp. 45, 46–47 (S.D. N.Y.1989), *aff'd,* 912 F.2d 550 (2d Cir.1990); *Renovitch v. Stewardship Concepts,* 654 F.Supp. 353, 358 (N.D.Ill.1987). We share the conclusion reached by the Eighth Circuit that the phrase "fraud or concealment" in § 1113 "incorporates the fraudulent concealment doctrine." *Schaefer,* 853 F.2d at 1491.

Plaintiffs' reading of § 1113 would also give parties seeking to allege breaches of fiduciary duty under ERISA who wait

more than three years to bring their claim an incentive to allege facts amounting to one cause of action, fraud, rather than other equally applicable (but time-barred) causes of action such as breach of the plan contract. While it is not uncommon for parties to cast the same set of facts in such a way that they amount to a claim that is not time-barred rather than one that is, we are reluctant to read § 1113 as encouraging this practice. Moreover, the effect of plaintiffs' reading would be to create a longer limitations period for fraud claims than for claims founded on written contracts, precisely the reverse of the position taken by most American jurisdictions.[2] Such a comparison is particularly relevant as applied to claims for breach of the fiduciary duties imposed by ERISA, because these claims can generally be pleaded in two ways: fraud and breach of the written plan agreement and its concomitant obligations of good faith and fair dealing. Indeed, such a contract claim has been alleged in this case.

Of course, it is possible that Congress intended § 1113 to single out fraud claims for a six-year limitations period. As the division of judicial opinion on the interpretation of § 1113 suggests, however, it did not express this intent unambiguously. Resort to the legislative history of § 1113 also provides no clear answer. A precursor to § 1113 at first seems to support plaintiffs' reading, establishing a longer limitations period for fraud claims and claims where concealment is alleged. *See* S. 4, 93d Cong., 1st Sess. § 11 (draft, Jan. 4, 1973), *reprinted*, 1 Legislative History of the Employee Retirement and Income Security Act of 1974 at 315 (1976) ("In the case of a willfully false or fraudulent statement or representation of a material fact or the willful concealment of, or willful failure to disclose, a material fact required by this Act to be disclosed, a proceeding in court may be brought at any time within ten years after such violation occurs."). But the language in this distant ancestor of ERISA § 413 would, in cases where the underlying conduct was fraud or concealment, have allowed suit to be brought up to 10 years *after the violation occurred.* This language was no doubt prompted by Congress's apprehension that fraud claims and claims based on willfully concealed facts will often be difficult for plaintiffs to discover, arguing for a long period after the time the fraudulent acts occur in which plaintiffs may bring suit. What emerged as § 1113(a)(2), by contrast, sets a limitations period of three years after the prospective plaintiff first has *actual knowledge* of the conduct giving rise to the cause of action for breach of fiduciary duty, compelling prospective plaintiffs who have discovered that they are victims of fraud or any other breach of fiduciary duty to file suit within three years or lose their claim. In any case, by mid-September, 1973, more than eleven months before ERISA's enactment in September 1974, the statute of limitations provision began to use the phrase "in the case of fraud or concealment." *See id.* § 697 (draft, Sept. 17, 1973), *reprinted*, 1 Legislative History at 1493. We decline plaintiffs' invitation to read this language to create a uniquely long limitations period for fraud claims but no other conduct giving rise to a claim for breach of fiduciary duty by an ERISA administrator.

---

**2.** *Compare, e.g.:* Ala.Code § 6–2–38(1) (1975 & Supp.1990) (two-year limitations period for fraud claims) *with id.* § 6–2–33(1) (ten years for claims founded on written contracts); Cal.Civ. Pro.Code § 338(d) (1982 & Supp.1990) (three-year limitations period for fraud claims) *with id.* § 337.1 (four years for claims founded on written contracts); Ill.Ann.Stat. ch. 110, ¶ 13–205 (Smith–Hurd 1985) (five-year limitations period for fraud claims) *with id.* ¶ 13–206 (ten years for claims founded on written contracts); Mass.Gen.Laws.Ann. ch. 260, § 2A (1959 & Supp.1990) (three-year limitations period for fraud claims) *with id.* § 2 (six years for claims founded on written contracts); Ohio Rev.Code Ann. § 2305.09(C) (1981 & Supp.1990) (four-year limitations period for fraud) *with id.* § 2305.06 (fifteen years for claims founded on written contract); 42 Pa.Cons.Stat.Ann. § 5524(2) (1981 & Supp.1990) (two-year limitations period for fraud) *with id.* § 5525 (four years for claims founded upon written contracts); Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986 & Supp.1990) (two-year limitations period for fraud) *with id.* § 16.004 (four years for claims founded upon written contracts).

## B. *Actual Knowledge Requirement*

■ Our application of a three-year limitations period does not, however, compel a decision for defendants. Instead, it raises the question of whether Schwarz had "actual knowledge" of defendants' breaches of their fiduciary duties by December 1983, three years before they filed suit. In deciding this issue, the district court interpreted § 1113 to bar suits brought more than three years after "the plaintiff had either actual *or constructive* knowledge of the suit," Mem. Op. at 16, and observed that "[t]he level of knowledge required to start the limitations period under § 1113 involves an analysis similar to that involved in determining requisite knowledge" under the limitations period applicable to claims brought under the federal securities laws. *Id.*

We disagree with this interpretation of § 1113. Under the law of this Circuit prior to our decision in *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990), district courts in Illinois applied the Illinois securities laws statute of limitations to § 10(b) claims. *See e.g., Wirtz,* 818 F.2d at 1331 (7th Cir.1987); *Tomera v. Galt,* 511 F.2d 504, 508–09 (7th Cir.1975). The applicable Illinois statute, Ill.Ann.Stat. ch. 121½, ¶ 137.13(D) (Smith–Hurd 1960 & Supp.1990), provides that the three-year limitations period applicable to securities fraud cases begins to run when the plaintiff has actual knowledge of the facts giving rise to the cause of action or when she "has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge," whichever occurs first. *Id.* "[N]otice of facts which in the exercise of reasonable diligence would lead to actual knowledge" is commonly referred to as constructive knowledge. *See* Black's Law

Dictionary 284 (5th ed. 1979) ("If one by exercise of reasonable care would have known of a fact, he is deemed to have had constructive knowledge of such fact."); *see also Beneficial Standard Life v. Madariaga,* 851 F.2d 271, 275 (9th Cir.1988) ("The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud.").

Unlike the Illinois securities statute of limitations, however, the ERISA limitations provision, § 1113, speaks solely in terms of *actual,* not constructive, knowledge. *See Brock v. Nellis,* 809 F.2d 753, 755, *cert. dismissed,* 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987) ("To charge [plaintiff] with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues."); *Benvenuto v. Taubman,* 690 F.Supp. 149, 153 (E.D.N.Y.1988). Because the securities and ERISA limitations periods accrue when plaintiffs have different levels of knowledge, a finding that the securities limitation period has accrued does not translate into a finding that the ERISA limitations period has accrued as well.[3] It was therefore error to hold that the ERISA statute of limitations is reduced to three years and begins to run "if the defendant can show that the plaintiff had either actual *or constructive* knowledge." Mem. Op. at 16 (emphasis supplied). Only actual knowledge will do. *Nellis,* 809 F.2d at 754–55.

The district court's discussion of plaintiffs' knowledge of their ERISA claim for the most part derived from its earlier analysis of their knowledge of the § 10(b) claims, in which the court found that plain-

---

3. In concluding that the ERISA limitations period began to run when plaintiffs achieved constructive knowledge, the district court relied on our decision in *Brock v. TIC Int'l Corp.,* 785 F.2d 168 (7th Cir.1986). *TIC Int'l,* however, concerned the application of § 1113 to a suit based on facts previously disclosed to the secretary of labor in an annual report filed by the plan administrator with the secretary. Before it was amended in 1987, § 1113 contained a provision barring suits brought more than three years

after "a report from which [the prospective plaintiff] could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title." This language was deleted from § 1113 in 1987, Omnibus Budget Reconciliation Act, Pub.L. No. 203, § 9342, 101 Stat. 1330, 1330–371 (1987), and is inapplicable to this case because the facts at issue here were not, so far as the record discloses, contained in reports filed by Shields or Stifel with the Secretary of Labor.

tiffs had at least constructive knowledge of the unauthorized trading, misrepresentation, and churning they allege. In dismissing the churning claim, for example, the district court noted that "[t]here is nothing in the record to support a finding that [Schwarz] would not have discovered the fraud, if any, *had he been reasonably diligent.*" Mem. Op. at 12 (emphasis supplied). Likewise, with respect to plaintiffs' claim that Shields had invested funds from the two accounts in poor quality stocks in contravention of Schwarz's instructions, the district court wrote that "prior to September 1983 Schwarz had *at least the 'storm warnings' that triggered the duty to inquire further.*" *Id.* at 10. We read these statements by the district court as at least implying that plaintiffs had constructive knowledge of the facts giving rise to their ERISA claim before December, 1983. We do not, however, read the district court's opinion as holding that plaintiffs had actual knowledge of their ERISA claim by that date, and remand to provide the district court with an opportunity to decide that issue.

### III. THE SECURITIES CLAIMS

■ In *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990) we reconsidered the question of what statute of limitations should apply to § 10(b) claims, and decided to apply the three-year limitations period contained in § 13 of the Securities Act of 1933, 15 U.S.C. § 77m, rather than the three-year period contained in Ill. Ann.Stat. ch. 121½, ¶ 137.13(D). At first blush it might seem that, because we are substituting one three-year period for another, the application of the federal limitations provision rather than the Illinois provision would be of little importance to the decision of this case. We are persuaded, however, that it would be more appropriate to remand the securities claims for reconsideration by the district court in light of our decision in *Short.*[4] We would benefit from the district court's examination of the

"question of some subtlety," 908 F.2d at 1390, posed by the retroactive application of our decision in *Short* to the facts of this case. *See Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1122 (7th Cir.1990). Should the district court conclude that *Short* should apply retroactively, moreover, we would also welcome its examination of the accrual and tolling principles applicable to § 13 and the extent to which those federal principles differ from the analogous Illinois principles we have previously applied in § 10(b) cases. *See Norris v. Wirtz,* 818 F.2d 1329, 1331 (7th Cir.1987).

### IV. CONCLUSION

For the foregoing reasons, we reverse and remand the district court's grant of summary judgment to defendants on the ERISA claim, and vacate and remand for reconsideration its grant of summary judgment to defendants on the § 10(b) securities claims. We also reinstate the pendent state claims dismissed for want of subject-matter jurisdiction.

REVERSED IN PART, VACATED IN PART, AND REMANDED.

---

4. We also note that the Supreme Court has granted review of a case posing the issue we decided in *Short. Lampf, Pleva, Lipkind, Prupis* & *Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 242, 112 L.Ed.2d 201 (1990).