ELBERT PATTERSON et al., Respondents, v THOMAS F. MINEHAN et al., Appellants, et al., Defendants.

Third Department, June 11, 1992

## APPEARANCES OF COUNSEL

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski (Susan D. Harvey, Pamela A. Nichols* and *Edward D. Laird, Jr.,* of counsel), for appellants.

*McPhillips, Fitzgerald & Meyer (Martin A. Meyer* of counsel), for respondents.

**OPINION OF THE COURT**

MERCURE, J.

Plaintiffs instituted this malpractice action in November 1988 claiming, *inter alia,* that defendant Thomas F. Minehan erroneously diagnosed plaintiff Elbert Patterson (hereinafter plaintiff) as having cancer of the pancreas and that, as a result, plaintiff underwent unnecessary radiation therapy, surgery, X rays and laboratory tests. Supreme Court denied the motion of Minehan and defendant Adirondack Surgical Group (hereinafter collectively referred to as defendants) for summary judgment dismissing the complaint on the ground that the Statute of Limitations had expired and found questions of fact as to whether the treatment that Minehan provided was continuous and related to plaintiff's original condition. Defendants contend on this appeal that this determination was error because, upon plaintiff's discharge from the hospital in April 1985, no future plan of treatment was formed and Minehan's subsequent treatment of plaintiff for discrete illnesses was insufficient to toll the Statute of Limitations.

An action for medical malpractice must be commenced within 2½ years of the date of accrual (CPLR 214-a). A claim generally accrues on the date of the alleged wrongful act or omission *(Nykorchuck v Henriques,* 78 NY2d 255, 258). Under the doctrine of continuous treatment, however, the statute is tolled until after a plaintiff's last treatment " 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint' " *(McDermott v Torre,* 56 NY2d 399, 405, quoting *Borgia v City of New York,* 12 NY2d 151, 155). The doctrine is designed to "maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure" *(McDermott v Torre, supra,* at 408) and, therefore, a patient need not " 'choose between silently accepting continued corrective treatment * * * with the risk that his claim will be time-barred or promptly instituting an action, with the risk that the physician-patient relationship will be destroyed' " *(Ross v Community Gen. Hosp.,* 150 AD2d 838, 840, quoting *Rizk v Cohen,* 73 NY2d 98, 104).

Thus, the Court of Appeals has emphasized that a patient is not entitled to the benefit of the toll unless there has been a

course of treatment established with respect to the condition that gives rise to the lawsuit *(Nykorchuck v Henriques, supra,* at 258-259). Neither the mere continuing physician-patient relationship *(McDermott v Torre, supra,* at 405), "the continuing nature of a diagnosis" *(supra,* at 406), routine examinations of an apparently healthy patient, diagnostic examinations, even when conducted repeatedly over a period of time *(Massie v Crawford,* 78 NY2d 516, 520), nor a patient's initiation of return visits merely to have his or her condition checked *(McDermott v Torre, supra,* at 405) is sufficient to satisfy the requirements of the doctrine.

The pertinent circumstances in the instant case are as follows. On April 1, 1985, Minehan diagnosed a mass at the head of plaintiff's pancreas as a carcinoma and then performed a pancreatoduodenal resection, a gastric and biliary bypass procedure and a vagotomy. Plaintiff was discharged from the hospital on April 23, 1985, but thereafter developed a pseudocyst that necessitated further surgery and hospitalization until June 2, 1985. Plaintiff had several appointments with Minehan between June 2, 1985 and April 13, 1988. Defendants' records indicate that plaintiff was being seen in "follow-up", and numerous laboratory tests and X rays, including blood tests and a liver scan, were ordered. In addition, Minehan arranged a consultation with an oncologist from Albany Medical Center to discuss further treatment of plaintiff in order to prevent a recurrence of the tumor. Plaintiff thereafter participated in a program of radiation therapy at Albany Area Radiation Therapy Center from June 25, 1985 until August 1, 1985. Subsequently, plaintiff was hospitalized from September 4, 1985 to September 15, 1985 for the treatment of thrombophlebitis which Minehan testified could be related to the tumor of the pancreas. Because Minehan suspected that the cancer which he had diagnosed as being in the pancreas had spread and that lung surgery was required, plaintiff was again hospitalized from April 22, 1986 to April 28, 1986. Surgery performed by Minehan's associate revealed that the lung lesion was benign. Additional tests performed in January 1987 and February 1987 showed that plaintiff's bilirubin and alkaline phosphatase were elevated, causing Minehan to believe that plaintiff's bile duct was obstructed, possibly by a recurrence of the tumor. As a result, Minehan recommended that plaintiff be evaluated by an oncologist and possibly undergo further diagnostic surgery.

Contrary to defendants' contention, Supreme Court properly

determined that, at the very least, there are questions of fact as to whether this action was timely commenced under the doctrine of continuous treatment. The evidence in the record demonstrates that Minehan administered a lengthy and continuous program of postsurgical treatment to plaintiff from the date of the alleged medical malpractice in 1985 through April 13, 1988, when plaintiff agreed to be evaluated by Vermont Medical Center. Following Minehan's diagnosis of pancreatic cancer and surgery removing a significant portion of plaintiff's pancreas, Minehan scheduled "follow-up" visits, arranged for radiation therapy, treated plaintiff for thrombophlebitis which he suspected was connected to the cancer, arranged for lung surgery because he suspected that the cancer had spread to plaintiff's lungs and eventually recommended surgery to correct bile obstructions, which he believed were the result of a recurrence of the tumor. In these circumstances, there was evidence to support a finding that plaintiff's visits constituted "continuous treatment for the same illness, injury or condition which gave rise to the said act [of alleged malpractice]" and were not "examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition" (CPLR 214-a). Furthermore, the record establishes that "each of the plaintiff's visits was made pursuant to the directions of the defendant or his office, and it is clear that both parties contemplated the plaintiff's continued visits and treatment and shared a relationship of trust and confidence until the date of the plaintiff's discharge" (*Winant v Freund,* 162 AD2d 681, 682; *see, Richardson v Orentreich,* 64 NY2d 896; *McDermott v Torre,* 56 NY2d 399, *supra; Fonda v Paulsen,* 46 AD2d 540; *cf., Cizek v Bassett Hosp.,* 176 AD2d 1035; *Werner v Kwee,* 148 AD2d 701).

WEISS, P. J., MIKOLL, LEVINE and CASEY, JJ., concur.

Ordered that the order is affirmed, with costs.