OPINION OF THE COURT
Titone, J.
In this appeal, we once again address the doctrine of continuous treatment, which was first established in Borgia v City of New York (12 NY2d 151) and was later codified in CPLR 214-a.[1] We hold that the requirements of that doctrine are, as a matter of law, not satisfied when there has been mere reliance on a diagnosis, combined with subsequent doctor-initiated contact after an extended period with no physician-patient contact and the absence of objective factors indicating that this period had been expressly contemplated by the parties.
In January 1980 plaintiff Sarny Rizk, an anesthesiologist at New York University Medical Center (Medical Center), began *101 to experience ringing in his ears. After some initial testing and consultation with colleagues proved futile, plaintiff was referred in April 1980 to defendant Dr. Noel Cohen, an otolaryngologist, who was also affiliated with the Medical Center. Dr. Cohen sent plaintiff for a speech test, an audio-gram, and hot and cold stimulation. When these tests provided inconclusive evidence, Dr. Cohen had plaintiff admitted to the Medical Center. On April 17, 1980 plaintiff underwent a Cat Scan, an IV injection, a contrast injection, a myelogram and an encephalogram. The purpose of these tests was to determine whether plaintiff’s symptoms were indicative of an acoustic neuroma.
In evaluating the results of the tests, Dr. Cohen consulted with Dr. Chase, a radiologist employed by defendant Medical Center. Dr. Chase’s report following the tests indicated "soft tissue mass completely filling left internal auditory canal, a presumed acoustic neuroma”. In addition, the patient’s discharge summary, prepared by a hospital resident, noted as a final diagnosis "Rule out left internal auditory canal acoustic neuroma.”[2]
Although it is clear that the doctors had discussed the possibility of acoustic neuroma between themselves, there is a dispute as to what Dr. Cohen told plaintiff about his condition. Dr. Cohen claimed that he advised plaintiff that the problem was most likely an acoustic neuroma which would have to be monitored, and that plaintiff should return in six months for another Cat Scan. Plaintiff, on the other hand, testified that although they had discussed the possibility of acoustic neuroma prior to the tests, Dr. Cohen specifically told him that all the tests were negative, that the problem looked like a viral infection and that there was nothing to worry about. Plaintiff was discharged from the hospital on April 18, 1980.
There was no further contact between the parties until October 1983, when Dr. Cohen noticed the slides of plaintiff’s earlier tests while reviewing some slides for a lecture. Realizing he had not heard from plaintiff in over three years, Dr. Cohen contacted him to ask his permission to use his slides for the lecture, and to see what he had done about his ear condition. After learning that plaintiff had done nothing since *102 April of 1980, Dr. Cohen suggested that plaintiff have another Cat Scan, and a brain stem evoked response test (BSER), a new noninvasive audio metric test which was unavailable in 1980.
The tests revealed an acoustic neuroma which required immediate removal. As a result of the surgery, plaintiff claims he was left with a permanent hearing loss in his left ear, left side tinnitus, balance disturbance, left facial weakness and a loss of sensation in his left side and tongue. On May 2, 1984, plaintiff commenced this malpractice action against Dr. Cohen and the Medical Center, alleging negligence and fraudulent misrepresentation.
Defendant Medical Center moved to dismiss the complaint on the grounds that the action was time-barred and substantially lacking in merit. Defendant Dr. Cohen also moved to dismiss on the ground that the action was time-barred. Plaintiff opposed the motions, arguing that under the continuous treatment exception to the medical malpractice Statute of Limitations the action was not time-barred. He also argued that defendants should be estopped from asserting the Statute of Limitations defense due to their fraudulent concealment.
Supreme Court granted defendants’ motions for summary judgment on the ground that the action was time-barred. The court held that plaintiff did not come within the continuous treatment exception because treatment cannot be considered continuous, as a matter of law, when the interval between the malpractice complained of and the last visit exceeds the Statute of Limitations (see, Curcio v Ippolito, 97 AD2d 497, affd on other grounds 63 NY2d 967; Bennin v Ramapo Gen. Hosp., 72 AD2d 736; but see, Lomber v Farrow, 91 AD2d 725; see also, Renda v Frazer, 100 Misc 2d 511, affd 75 AD2d 490). Further, the court held that plaintiff had not established the elements of fraudulent concealment and misrepresentation, and thus defendants could not be estopped from raising the Statute of Limitations as a defense. The Appellate Division, First Department, unanimously affirmed, without opinion. We granted leave to appeal, and now affirm but for different reasons from those stated by Supreme Court.
At the outset, since plaintiff was discharged on April 18, 1980, and did not commence this action until May 2, 1984, it is clear that plaintiff’s action is time-barred under the applicable Statute of Limitations of 2Vi years (CPLR 214-a), unless continuous treatment is found to exist from the date of the *103 original diagnosis through Dr. Cohen’s initiation of contact with the plaintiff in October 1983. Although this malpractice action accrued on April 18, 1980, if continuous treatment is found to exist, the Statute of Limitations was tolled during the 3V2 years between plaintiffs contact with Dr. Cohen (see, McDermott v Torre, 56 NY2d 399, 407), and plaintiffs action would be timely.
Citing our decision in Richardson v Orentreich (64 NY2d 896), plaintiff argues there was a continuing relationship of trust and confidence between plaintiff and Dr. Cohen which began with plaintiffs reliance upon the initial diagnosis, and continued through Dr. Cohen’s contacting the plaintiff in October 1983 (see, Coyne v Bersani, 61 NY2d 939, 940; Greene v Greene, 56 NY2d 86, 94). Plaintiffs reliance on Richardson is misplaced. In Richardson, we held that "when further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future” (id., at 898-899), continuous treatment did not necessarily come to an end upon the patient’s last visit. That there was no contact between doctor and patient during the interim in Richardson was not dispositive because an ongoing physician-patient relationship was contemplated and, accordingly, the presumed continuing trust and confidence which underlies the continuous treatment doctrine was present.
Here, however, accepting plaintiffs version of the facts as we must on this summary judgment motion (Weiss v Garfield, 21 AD2d 156), it is clear that an ongoing relationship, as demonstrated by the existence of scheduled future appointments was not contemplated. Indeed, according to plaintiffs version of the facts, a future appointment would never have been made because he was told, perhaps erroneously, that there was nothing wrong with him. Thus, since neither the "continuing nature of a diagnosis” (McDermott v Torre, 56 NY2d 399, 406, supra), nor the "mere continuity of a general physician-patient relationship” (Borgia v City of New York, 12 NY2d 151, 157, supra), is sufficient to establish continuous treatment, plaintiffs position must stand or fall solely upon Dr. Cohen’s October 1983 phone call. In this regard, plaintiff argues that since Dr. Cohen initiated contact with him, there is at least a question of fact as to whether a continuing relationship of trust and confidence existed. We disagree.
In Borgia v City of New York (12 NY2d 151, supra), the *104 seminal case on the continuous treatment doctrine, we recognized that "[i]t would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital” (id., at 156). Thus, under the continuous treatment doctrine, "the time in which to bring a malpractice action is stayed 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint’ ” (McDermott v Torre, 56 NY2d 399, 405, supra, quoting Borgia v City of New York, 12 NY2d 151, 155, supra). The purpose of this doctrine is to ameliorate the harshness of a rule which ties accrual of a malpractice action to the date of the offending act (Lillich, Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Cornell LQ 339, 361), thereby creating a dilemma for the patient, who must choose between silently accepting continued corrective treatment from the offending physician, with the risk that his claim will be time-barred or promptly instituting an action, with the risk that the physician-patient relationship will be destroyed.
The cases illustrate that the determination as to whether continuous treatment exists, must focus on the patient. When "a timely return visit instigated by the patient” is made, the policies underlying the continuous treatment doctrine are implicated and the toll is properly invoked (McDermott v Torre, 56 NY2d 399, 406, supra [emphasis supplied]). However, where, as here, plaintiff did not seek corrective treatment and, in fact, allegedly did not even know that further treatment was necessary, there is no sound basis for applying the continuous treatment doctrine. Having purportedly been unaware of the need for further treatment, plaintiff was never confronted with the dilemma that led to the judicial adoption of the continuous treatment doctrine. That a degree of continuity exists by virtue of Dr. Cohen’s unilateral initiative in October 1983 is unhelpful to plaintiff’s position because that contact does not establish the continuing trust on the plaintiff’s part that the continuous treatment doctrine requires.[3]
Furthermore, sound policy reasons suggest that mere doctor-initiated contact, in the absence of other objective factors *105 indicative of a continuing relationship, should not fall under the continuous treatment doctrine (see, De Peralta v Presbyterian Hosp., 121 AD2d 346; cf., Ward v Kaufman, 120 AD2d 929 [doctor-initiated contact was sufficient to satisfy continuous treatment doctrine because it was reasonable to assume that doctor would want to X-ray or adjust plaintiffs cast]). Clearly, it is in society’s best interest to foster honest communication between physician and patient. Allowing continuous treatment to be invoked solely on a doctor-initiated communication might, we fear, encourage silence. Instead of suggesting new techniques, or pointing out a potential mistake from years earlier, a doctor fearful of a medical malpractice action might simply refrain from contacting a former patient. Here, for instance, since plaintiff had no knowledge of the potential misdiagnosis, it was ultimately in his best interest that Dr. Cohen contacted him. Indeed, Dr. Cohen suggested both a Cat Scan and a BSER, a test which was unavailable in 1980. Had Dr. Cohen not contacted plaintiff, the acoustic neuroma would have continued to grow, and no doubt the surgery would have been more serious, and the permanent damage more severe. We believe that the continuous treatment doctrine should not become a trap for a concerned physician who is simply trying to administer care to a patient.
Finally, although plaintiff strenuously argues that summary judgment is inappropriate because of the clear dispute in the facts, we conclude there are no legally dispositive facts in dispute concerning the application of the continuous treatment doctrine (see, CPLR 3212). In our view the medical services rendered by Dr. Cohen and the Medical Center were discrete and complete in April 1980, and the contact initiated by Dr. Cohen in October 1983 was a renewal, rather than a continuation, of the physician-patient relationship. Accordingly, we conclude, as a matter of law, that the doctrine of continuous treatment may not be invoked by plaintiff (see, Curcio v Ippolito, 63 NY2d 967, supra; McDermott v Torre, 56 NY2d 399, 405, supra; Davis v City of New York, 38 NY2d 257; Charalambakis v City of New York, 46 NY2d 785).
In addition, plaintiffs fraudulent concealment claim is without merit. In support of his claim that there was a fraudulent misrepresentation, plaintiff relies on the same act which forms the basis of his negligence claim — Dr. Cohen’s alleged improper advice to plaintiff that there was nothing wrong. Thus, plaintiffs allegations do not establish that Dr. Cohen, acting with knowledge of prior malpractice, made *106 subsequent misrepresentations in an attempt to conceal his earlier negligence (see, Simcuski v Saeli, 44 NY2d 442, 443).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Hancock, Jr., and Bellacosa concur; Judge Alexander taking no part.
Order affirmed, with costs.

. "An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure” (CPLR 214-a).

. During his EBT, Dr. Cohen testified that "to rule out something” means "that it is something that is to be seriously considered, but it cannot be definitely established”; the phrase is "used by residents and medical students when they are not sure of the diagnosis.”

. In effect, plaintiff’s argument seeks an extension of the discovery rule (CPLR 214-a). However, this court has consistently refused to judicially adopt the so-called "discovery rule” (see, Thornton v Roosevelt Hosp., 47 NY2d 780; Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427), leaving such rule making to the Legislature (see, CPLR 214-a, 214-b, 214-c, 203 [f|).