LILLIAN JORGE et al., Individually and as Parents of EMORY E. WHITE, an Infant, Appellants, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Respondent.

First Department, January 3, 1991

## APPEARANCES OF COUNSEL

*Michael D'Agostino* of counsel *(Robert D. Becker,* attorney), for appellants.

*William J. Thom* of counsel *(Fay Leoussis* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for respondent.

## OPINION OF THE COURT

KASSAL, J.

Where an act of alleged medical malpractice consists of the misreading of the results of a sickle cell anemia test administered to a man solely in conjunction with the genetic counseling and prenatal care of the woman who will bear his child, the obstetric care rendered during that pregnancy constitutes continuous treatment for the purpose of tolling the Statute of Limitations.

In January 1985, plaintiff Lillian Jorge, then 29 years of age, began to receive prenatal care at Bellevue Hospital, which is owned and operated by defendant, the New York City Health and Hospitals Corporation. Ms. Jorge, an employee of Bellevue Hospital, is black and a carrier of the genetic trait of sickle cell anemia. Aware that a child of parents who both have the sickle cell trait has a 1-in-4 chance of being born with the fatal disease, Ms. Jorge sought and obtained genetic counseling as a part of her prenatal care at Bellevue, and arrangements were made for the father, plaintiff Emory White, to be tested for sickle cell trait on January 16, 1985. Having been erroneously advised by Bellevue Hospital that Mr. White's test result was negative, Ms. Jorge, who would otherwise have terminated the pregnancy, carried to term, and on August 30, 1985, the infant plaintiff, Emory Elijah White, was born with sickle cell anemia.

On November 27, 1985, a notice of claim was filed against the defendant, and on or about September 11, 1986, this lawsuit was commenced. Plaintiffs do not assert a "wrongful life" claim, which is not recognized in this State but, rather, seek damages for the pecuniary expenses to be incurred in the care and treatment of the infant during his lifetime. *(See, Becker v Schwartz,* 46 NY2d 401.)

The disease of sickle cell anemia, largely suffered by blacks, is characterized by the presence of blood cells shaped in a crescent, or "sickle" shape, instead of the normal round shape, which impede blood circulation and thus interfere with the function of a number of the body's organs. It generally requires many hospitalizations during the patient's lifetime, and results in death in early adulthood. Consistent with this

pattern, the infant plaintiff has had nine hospitalizations for pneumonia, and one for heart failure, in the first three years of his life.

In granting defendant's motion to dismiss the complaint as time barred, the IAS part determined the date on which the causes of action accrued to be January 16, 1985, when the plaintiff father's test result was incorrectly read as negative for sickle cell trait, and ruled that no toll for continuing treatment was available in these circumstances.

A medical malpractice claim generally accrues on the date of the alleged wrongful act or omission *(Davis v City of New York,* 38 NY2d 257, 259) which, in the instant case, was correctly determined by the IAS part to be January 16, 1985. Under the continuous treatment doctrine, established in *Borgia v City of New York* (12 NY2d 151) and subsequently codified in CPLR 214-a, the time in which to institute such an action " 'is stayed "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" '." *(Rizk v Cohen,* 73 NY2d 98, 104; *McDermott v Torre,* 56 NY2d 399, 405; *Borgia v City of New York, supra,* at 155.) This rule applies to both the 2 years and 6 months' Statute of Limitations for medical malpractice (CPLR 214-a) and the 1 year and 90 days' Statute of Limitations applicable to the municipal defendant. *(See,* General Municipal Law § 50-i; McKinney's Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 20 (2); L 1969, ch 1016, § 1, as amended]; *Marabello v City of New York,* 99 AD2d 133, *appeal dismissed* 62 NY2d 942.)

In the facts presented, the Statute of Limitations, absent a toll, would render plaintiffs' notice of claim, filed November 27, 1985, and lawsuit commenced September 11, 1986, time barred (General Municipal Law §§ 50-e, 50-i). Defendant argues that the ruling in *Delaney v Muscillo* (138 AD2d 258) precludes application of the continuous treatment doctrine in this case, which would provide such a toll. There, the erroneous reading of an Rh factor test given during the plaintiff mother's first pregnancy resulted in the birth of an impaired child in her fourth pregnancy. In denying the applicability of the continuous treatment doctrine, this court reasoned that "there was neither continuity of treatment nor identity of condition" in the four pregnancies but, rather, "discrete" and unrelated obstetric care given for each pregnancy *(supra,* 138 AD2d, at 260, 261).

The case before us is distinguishable, inasmuch as it involves a single pregnancy, for which, significantly, plaintiff sought and received genetic counseling regarding a specific condition, requested and obtained the testing of the baby's father in connection therewith, and continued to make inquiry, during subsequent consultations with her physician, about the possibility that the child would be born with sickle cell anemia. Because the testing of plaintiff father was sought and conducted solely in connection with Ms. Jorge's pregnancy, and was an integral part of her treatment, we hold that the act of medical malpractice, consisting of an erroneous negative reading of the test results, was committed in the context of her care, treatment, and genetic counseling. This medical care began in January 1985 and continued until the birth of the plaintiff infant on August 30, 1985. Of particular significance is that, despite Ms. Jorge's repeated inquiries during the course of her pregnancy, no further tests were administered, or other action taken, to allay her fears and confirm the absence of the sickle cell trait in the baby's father.

Nor does the holding in *Rodriguez v Manhattan Med. Group* (155 AD2d 114) mandate a different result. That case, in which the defendant physician failed to detect the presence of an intrauterine device previously inserted by another physician, involved the concept of foreign object discovery as a Statute of Limitations toll. We held that the IUD was not transformed into a foreign object by the defendant doctor's negligent failure to detect it. Thus, not only was a wholly different basis for the Statute of Limitations toll involved, but the majority of the court found no factual basis upon which it could be invoked.

Accordingly, the judgment, Supreme Court, New York County (Stanley L. Sklar, J.), entered on or about April 28, 1989, which granted defendant's motion to dismiss the complaint for failure to file a timely notice of claim, should be reversed, on the law, and the complaint reinstated, without costs.

WALLACH, J. (dissenting). I would affirm the judgment appealed from. Before invoking the toll provided by the "continuous treatment" rule to salvage this otherwise time-barred medical malpractice action, the law requires us to examine the nature of the "treatment" and to whom it was rendered. And unless, under CPLR 214-a (the codification of the continu-

ous treatment rule first enunciated in *Borgia v City of New York,* 12 NY2d 151) "there is continuous treatment *for the same illness, injury or condition which gave rise to the said act, omission or failure* [constituting malpractice]" the toll is not available to either plaintiff. No one suggests that any treatment whatever was rendered to the father, Emory White, which could extend the limitation period as to him; therefore any cause of action he may have is manifestly time barred. And, because the treatment being rendered to the mother, Lillian Jorge, was routine prenatal care, wholly unrelated to sickle cell anemia, which never presented any opportunity to confront, much less to treat, the consequences of the negligent test administered to her husband on January 16, 1985, the toll is also inapplicable to her cause of action.

The fundamental rationale for application of the continuous treatment doctrine is absent in this case. The reason for judicial acceptance in New York of this toll, recognized earlier in other jurisdictions, was stated by the Court of Appeals in *Borgia (supra,* at 156): "It would be absurd to require a wronged patient to *interrupt corrective efforts* by serving a summons on the physician or hospital superintendent or by filing a notice of claim in the case of a city hospital". (Emphasis added.)

Before the toll becomes available there must be proof that the patient has made a choice to repose continuing confidence in the physician to correct or ameliorate the effect of a professional error rather than to have recourse to the legal system. As was observed in *Rizk v Cohen* (73 NY2d 98, 104): "The cases illustrate that the determination as to whether continuous treatment exists, *must focus on the patient.*[1] When 'a timely return' visit *instigated by the patient'*[2] is made, the policies underlying the continuous treatment doctrine are implicated and the toll is properly invoked *(McDermott v Torre,* 56 NY2d 399, 406, *supra* [emphasis supplied]). However, where, as here, plaintiff *did not seek corrective treatment and, in fact, allegedly did not even know that further treatment was necessary, there is no sound basis for applying the continuous treatment doctrine.*"[1]

That is precisely the position of plaintiffs here, who at no time were aware that "further treatment was necessary" and were not in fact receiving "further treatment". And as further noted in *Rizk (supra,* at 103), neither the "continuing nature

1. This emphasis added.
2. This emphasis in original.

of [the] diagnosis" *(McDermott v Torre,* 56 NY2d 399, 406, *supra)* nor the "mere continuity of a general physician-patient relationship" *(Borgia v City of New York, supra,* at 157) is sufficient to establish continuous treatment. Nor does even lengthy interaction between doctor and patient, without actual treatment of the condition providing the gravamen of the malpractice action, suffice *(Nykorchuck v Henriques,* 153 AD2d 316; *Delaney v Muscillo,* 138 AD2d 258, *appeal dismissed* 73 NY2d 852).

I am aware that the majority is striving to reach a sympathetic result. But because the Legislature has already declared itself in this area, the unsupportable judicial expansion here undertaken of the continuous treatment rule is inappropriate, and the sole remedy is further legislative action *(Rodriguez v Manhattan Med. Group,* 155 AD2d 114).

CARRO, J. P., ROSENBERGER and ELLERIN, JJ., concur with KASSAL, J.; WALLACH, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, entered on or about April 28, 1989, reversed, on the law, and the complaint reinstated, without costs.