Samuel **WEINBERG**, Plaintiff,

v.

Alan **GIBSTEIN**, M.D., Defendant.

No. 89–CV–3000.

United States District Court,
E.D. New York.

Feb. 15, 1991.

Crupain & Greenfield (David Crupain, of counsel), New York City, for plaintiff.

Martin, Clearwater & Bell (Stephen D. Weiner, of counsel), New York City, for defendant.

## MEMORANDUM–DECISION & ORDER

BARTELS, District Judge.

The defendant in this diversity suit, Dr. Alan Gibstein, moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that plaintiff's action is time barred by New York's two and one-half year statute of limitations for medical malpractice actions. C.P.L.R. § 214–a. Plaintiff Samuel Weinberg, suing on behalf of his wife, decedent Estelle Weinberg, counters that the statute was tolled by the "continuous treatment" doctrine.

### Facts

Plaintiff's decedent Estelle Weinberg (hereafter "Weinberg") first visited the Defendant Gibstein in March of 1980, complaining of vaginal bleeding. In May of 1980 defendant diagnosed Weinberg as having cancer of the uterus and prescribed Megace hormonal treatment. Weinberg visited the defendant intermittently through 1983, with continuing complaints of vaginal and rectal bleeding. In May of 1983 the defendant's diagnosis showed that Weinberg's cancer was still spreading. The defendant finally performed a hysterectomy on Weinberg on September 7, 1983. During a post-operative conference held a week later, a committee of doctors concluded that Weinberg had no residual cancer and that no additional therapy was required.

Weinberg continued to visit the defendant intermittently after her hysterectomy. During visits through 1984 Weinberg complained of a number of maladies, including pains around the location of her surgical incision, diarrhea, headaches, extreme tiredness, and rectal bleeding. In 1985 she complained of problems with eating, nausea, vomiting and diarrhea. Weinberg continued seeing defendant semi-annually from 1986 through 1988. During that period she continued to complain of bleeding, as well as a greenish discharge.

Weinberg last visited defendant in March of 1989. At that time she was admitted to Long Island Jewish Medical Center, where it was discovered that her cancer had metastasized to the abdomen and colon. Weinberg subsequently underwent surgery for the removal of very large abdominal tumors. Weinberg commenced this action in September of 1989 and has since died.

### Discussion

"If the defendant in a run-of-the-mill civil case moves for summary judgement ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "[S]ummary judgement will not lie if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, at 477 U.S. 247, 106 S.Ct. 2510. "[T]he question whether summary judgement is appropriate in any case is one to be decided upon the particular facts of that case." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259, 88 S.Ct. 1575, 1577, 20 L.Ed.2d 569 (1968).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...." *Anderson, supra*, at 477 U.S. 255, 106 S.Ct. 2513. "The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor." *Id.*

### "Continuous Treatment" Doctrine

Plaintiff claims that the "continuous treatment" doctrine tolls the statute of limitations. C.P.L.R. § 214–a provides in pertinent part:

An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure.... For the purpose of this section the term "continuous treatment" shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition....

"The policy underlying the continuous treatment doctrine seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure ... [and] that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so." *McDermott v. Torre,* 56 N.Y.2d 399, 408, 452 N.Y.S.2d 351, 355, 437 N.E.2d 1108, 1112 (1982).

Courts applying the continuous treatment doctrine must differentiate between cases involving discrete diagnostic visits as opposed to return visits related to the same original condition. "[E]xaminations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition" are excluded from the statutory definition of "continuous treatment". C.P.L.R. § 214–a. *See also, Bobrow v. DePalo,* 655 F.Supp. 685, 688 (S.D.N.Y.1987) (Leval, J.) ("independent checkups for the detection of breast cancer do not constitute a continuous course of treatment"); *Werner v. Kwee,* 539 N.Y. S.2d 449, 450, 148 A.D.2d 701 (2d Dept. 1989) (no continuous treatment where plaintiff underwent surgery for cancer by different physician and then saw defendant

physician semi-annually to guard against recurrence; visits with defendant were discrete, complete, and for the sole purpose of ascertaining state of patient's condition).

However, as the New York Court of Appeals held in *McDermott, supra,* at 56 N.Y.2d 405–06, 452 N.Y.S.2d 354, 437 N.E.2d 1111, once a condition has been diagnosed and treatment has begun, return visits to *treat* the original condition obviously constitute continuous treatment:

The statute of limitations may begin to run once a hospital or physician considers the patient's treatment to be completed and does not request the patient to return for further examination. This is not to say, however, that a complete discharge by a physician forever bars a finding of continuous treatment. Included within the scope of "continuous treatment" is a timely return visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment.

Nevertheless, the plaintiff must show more than the mere continuation of the physician-patient relationship. As the *McDermott* Court cautioned, there is no *treatment* where a patient initiates a return visit merely to have her condition *checked,* since "the continuing nature of a diagnosis does not itself amount to continuous treatment". *Id.* Instead, the patient must have returned for "*treatment* for a matter related to the initial treatment." *Id.* (emphasis added).

"The cases illustrate that the determination as to whether continuous treatment exists must focus on the patient. When '*a timely return visit instigated by the patient*' is made, the policies underlying the continuous treatment doctrine are implicated and the toll is properly invoked." *Rizk v. Cohen,* 73 N.Y.2d 98, 538 N.Y.S.2d 229, 535 N.E.2d 282 (1989) (emphasis in original), quoting *McDermott, supra,* at 56 N.Y.2d 406, 452 N.Y.S.2d 351, 437 N.E.2d 1108. By contrast, "mere doctor-initiated contact, in the absence of other objective factors indicative of a continuing relationship, should not fall under the continuous treatment doctrine." *Rizk, supra.*

However, doctor-initiated post-operative observation is a classic example of an objective factor indicative of continuous treatment. *Id.* "If a patient continues under post-operative observation by his physician and is advised that his condition is being cured, this is as much 'treatment' as affirmative acts such as surgery, therapy, or prescription of medicines". *Fonda v. Paulsen*, 363 N.Y.S.2d 841, 844, 46 A.D.2d 540 (3d Dept.1975). *See also, Ward v. Kaufman*, 502 N.Y.S.2d 883, 120 A.D.2d 929 (4th Dept.1986) (phone call from a doctor telling the patient to return for an x-ray held sufficient to prolong the treatment). "A determination as to whether there is continuous treatment should be based upon whether there exists a relationship of continuing trust and confidence between the patient and the physician ... Regardless of the absence of physical or personal contact between them in the interim, where the physician and patient reasonably intend the patient's uninterrupted reliance upon the physician's observation, directions, concern, and responsibility for overseeing the patient's progress, the requirement for continuous care and treatment for the purpose of the statute of limitations is certainly satisfied." *Ward, supra*, at 520 N.Y.S.2d at 884, 120 A.D.2d at 930.

*Appropriateness of Summary Judgment*

■ There is a genuine factual question as to whether Weinberg's visits during the period 1983 through 1989 constituted a continuous course of treatment. There are a myriad of New York cases which hold that summary judgement should be denied under circumstances similar to those here present. For example, the Court refused to grant summary judgment in *Babcock v. Lane*, 1990 WL 3194 (S.D.N.Y.1990), where a doctor did not diagnose cancer in the plaintiff's knee during repeated visits for treatment from 1979 until 1984, when a malignant tumor was finally discovered and the plaintiff's leg had to be amputated, finding "that a genuine issue of fact is in dispute as to whether or not plaintiff had been undergoing continuous treatment". *See also, Richardson v. Orentreich*, 64 N.Y.2d 896, 487 N.Y.S.2d 731, 477 N.E.2d 210 (1985) (question of fact as to whether

patient's treatment ended on date of last visit or whether treatment continued until next scheduled appointment precluded summary judgment); *Edmonds v. Getchonis*, 541 N.Y.S.2d 250, 252, 150 A.D.2d 879 (3rd Dept.1989) (where plaintiff sought dental treatment in 1977, was discharged in 1978, returned with related problems in 1980, and remained under dentist's care through 1982, genuine factual question existed as to whether 1980 return visit was "timely", for purposes of establishing continuous treatment); *McKinney v. Bay Ridge Medical Group*, 511 N.Y.S.2d 123, 126 A.D.2d 711 (2d Dept.1987) (genuine factual question existed as to whether one of purposes of patient's visits to doctors during period 1973 through 1979 was continuous treatment of pain in leg, which was caused by broken drill bit which had become embedded in leg during surgery in 1967); *Otero v. Presbyterian Hospital*, 497 N.Y.S.2d 381, 382, 116 A.D.2d 511 (1st Dept.1986) (genuine factual question existed as to whether patient was treated or merely diagnosed during a post-operative examination). *Cf. Brown v. St. Barnabas Hosp. for Chronic Diseases*, 553 N.Y.S.2d 48, 159 A.D.2d 674 (2d Dept.1990) (no triable issue of fact where plaintiff failed to tender sufficient proof to establish that treatment was for same condition as that which plaintiff was subsequently treated for).

*Conclusion*

Many factual questions remain concerning whether Weinberg's treatment was continuous: Who instigated her periodic visits with the defendant from 1983 through 1989? Were the symptoms she complained of related to the cancer which was treated in 1983? Would a reasonable person assume that the defendant wanted to see Weinberg through 1989 because of a continuing concern with her prior condition?

The Court recognizes that the defendant flatly asserts that he stopped treating Weinberg for cancer because she was cured after her hysterectomy. However, given the patient's persistent complaints and the subsequent spread of her cancer,

this bald assertion strains credulity. In particular, her complaints of bleeding, which resembled the initial symptoms preceding her first cancer diagnosis, as well the fact that the cancer was progressively metastasizing into large tumors throughout her abdomen, makes it hard to believe that the defendant was not continuing to treat her for her original condition. At the very least, this dispute raises a clear question of credibility for the jury.

Moreover, the issue of continuous treatment would still remain even if the defendant's position of cure were true. "If a patient continues under post-operative observation by his physician and is advised that his condition is being cured, this is as much 'treatment' as affirmative acts such as surgery, therapy, or prescription of medicines". *Fonda v. Paulsen*, 363 N.Y.S.2d 841, 844, 46 A.D.2d 540 (3d Dept.1975).

All of these questions present material issues of fact for the jury, making summary judgment inappropriate. Defendant's motion is accordingly denied.

SO ORDERED.