■ SUSANNA L. NEUMANN et al., Appellants, v NASSAU COUNTY MEDICAL CENTER et al., Respondents. [619 NYS2d 721]

—In an action to recover damages for negligence, the plaintiffs appeal from an order of the Supreme Court, Nassau County (Lockman, J.), dated June 23, 1993, which granted the defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (5) and General Municipal Law § 50-e.

Ordered that the order is affirmed, with costs.

On August 10, 1989, the plaintiff Susanna L. Neumann went to the Nassau County Medical Center following a fall at her home. Following her release on August 18, 1989, she was advised to return for a followup visit on August 25, 1989. When she did, a "CAT scan" was taken of the abdominal portion of her body, including her breasts. A report prepared on the following day stated: "Incidentally noted is a low density within the right breast measuring approximately 1.5 cm which may represent a cyst. Correlation with mammogram is recommended". No one at the facility ever notified the plaintiff Neumann of that recommendation.

On June 20, 1991, during a routine screening mammogram elsewhere, the examining physician noted "nodularity of the right breast" and on October 4, 1991, a biopsy of the breast was conducted, which revealed an intraductal carcinoma.

The plaintiffs subsequently served a notice of claim on the defendants on or about January 10, 1992, and commenced this action on or about January 11, 1993. The defendants have maintained throughout that this action is barred owing to a failure to comply with General Municipal Law § 50-e and because the action was not commenced within the one-year 90-day Statute of Limitations in General Municipal Law § 50-i.

Passive failure to disclose the existence of a condition warranting further medical treatment is not a continuing wrong (see, Rizk v Cohen, 73 NY2d 98; Phelps v Greco, 177 AD2d 559). Therefore, the cause of action to recover damages accrued in August 1989 and the plaintiffs failed to timely serve a notice of claim pursuant to General Municipal Law § 50-e or timely commence their action within the applicable one-year 90-day limitations period set forth in General Municipal Law § 50-i. Thompson, J. P., O'Brien, Santucci and Joy, JJ., concur.

Miller, J., concurs in the result, with the following memorandum: I reluctantly concur with the conclusion reached by my colleagues that the plaintiffs' complaint was properly dismissed as time barred. The unfortunate current state of the law is such that a person, such as the plaintiff Susanna L. Neumann, may be the victim of a potentially fatal misdiagno-

sis, acknowledged by an admission in her medical records, which gives rise to a malpractice cause of action that is time barred before she even becomes aware of the malpractice *(see, Rizk v Cohen,* 73 NY2d 98; *Phelps v Greco,* 177 AD2d 559). The tragic facts of this case clearly illustrate why the law should be changed.

In August 1989, the plaintiff came under the care of the defendant doctors at the defendant Nassau County Medical Center (hereinafter NCMC) as a result of injuries she sustained in a fall. As part of the diagnosis and treatment of her injuries, on August 25, 1989, the plaintiff's abdomen was examined by a "CAT scan". On August 26, 1989, a radiologist issued a report that "[i]ncidentally noted [the presence of] a low density within the right breast measuring approximately 1.5 cm which may represent a cyst. Correlation with mammogram is recommended". Thus, one of the defendant NCMC's doctors discovered a possible breast cancer, recommended a mammogram, and recorded the same in his report which was part of the plaintiff Neumann's medical records. No one at the defendant NCMC, however, bothered to transmit this vital information to Neumann until she learned of it on October 17, 1991. By that time, she had been diagnosed with "multifocal areas of intraductal carcinoma with a microscopic focus of intrafiltrating carcinoma". On October 30, 1992, Neumann underwent a right modified radical mastectomy with breast reconstruction. The plaintiffs adduced evidence that the two years during which NCMC personnel failed to notify her of their concerns caused a worsening of her prognosis.

It is clear that the plaintiffs' claims against NCMC are subject to the one-year 90-day notice of claim provisions contained in General Municipal Law § 50-i *(see, Phelps v Greco,* 177 AD2d 559, *supra* [which presented a virtually identical alleged omission by physicians at NCMC]; *Matter of Kurz v New York City Health & Hosps. Corp.,* 174 AD2d 671). Indeed, it is beyond cavil that the court lacks jurisdiction to even grant leave to serve a late notice of claim after the expiration of the one-year 90-day period of limitations *(see, e.g., Lopez v Brentwood Union Free School Dist.,* 149 AD2d 474). Accordingly, the court had no choice but to dismiss the plaintiffs' claims against NCMC.

I would be seriously remiss, however, if I did not take advantage of my position as a Judge, to call upon the Legislature to consider amending the law to end this intolerable situation whereby innocent injured malpractice victims are left without judicial recourse.

Adoption of a discovery rule in cases such as this, as was enacted in CPLR 214-c in connection with latent injuries caused by exposure to certain toxic substances, would serve similar laudable purposes as did that enactment. The need perceived by the Legislature concerning victims of toxic torts, to enable them to pursue their claims following discovery of their injuries rather than being locked out of court by an arbitrary Statute of Limitations which many times expired before they ever learned of their injuries, is equally apparent in this case (see, Hymowitz v Eli Lilly & Co., 73 NY2d 487, cert denied 493 US 944). This is especially so since a malpractice defendant may be able to completely insulate itself from liability by intentionally concealing its misdiagnosis until after the expiration of the period of limitations. While there is no evidence in this case to suggest that NCMC intentionally, rather than negligently, failed to convey to Neumann critical information and its recommendation that she undergo a mammogram, the fact remains that NCMC recorded the information and recommendations in the hospital record but never notified Neumann of her potential breast cancer condition until after the period of limitations had expired, by which time NCMC's omission allegedly had become a proximate cause of her worsened condition. Unintentional or not, it is unacceptable that persons in Neumann's position can find themselves without judicial recourse.

Moreover, malpractice of this nature, memorialized in writing in a medical record, is every bit as verifiable as is malpractice in connection with the discovery of a foreign object in a patient's body. The Court of Appeals found this to be of critical importance in Flanagan v Mount Eden Gen. Hosp. (24 NY2d 427) wherein it judicially created the exception, subsequently codified by the Legislature in CPLR 214-a, providing for a discovery accrual rule governing malpractice claims based upon the failure to remove a surgical clamp from a patient's body. Certainly, the legitimate concern that a discovery rule will lead to specious suits is not implicated when the malpractice is acknowledged and memorialized in a medical record, but the vital information is not transmitted to the patient. Thus, the rationale underlying the decision in Flanagan v Mount Eden Gen. Hosp. (supra) as well as that underlying the enactment of CPLR 214-a, is equally applicable to cases such as this, since a patient is no more able to discover this type of malpractice than is one able to discover a clamp or a sponge left behind following an operation, and is no more able to falsify such a claim. Rather, adoption of a discovery

rule in a case such as this would, as in *Flanagan,* "strike * * * a fair balance in the field of medical malpractice" *(Flanagan v Mount Eden Gen. Hosp., supra,* at 430-431).

Accordingly, I respectfully urge the Legislature of this State to revisit this most inequitable situation and to consider enactment of a discovery rule to govern cases such as this. Fundamental fairness cries out for a change in the existing law that provides no protection to the public against egregious neglect nor any consequence to those responsible for documented malpractice.