OPINION OF THE COURT
Bruce D. Albert, J.
Defendants’ application to amend the answers interposed so *804 as to raise plaintiffs asserted lack of capacity as an affirmative defense, and, upon a grant of such amendment relief, for the summary dismissal of the action based thereon is denied without prejudice to renewal upon compliance with the court’s directive hereinbelow articulated.
The instant application is predicated upon plaintiffs failure to delineate the claims on which the underlying action is predicated in a proceeding she voluntarily initiated under chapter 7 of the United States Bankruptcy Code, which proceeding ultimately resulted in a release of all dischargeable debts. The bankruptcy proceeding appears to have been initiated and determined during the temporal parameters of the plaintiffs ongoing course of treatment with defendant, Arnold Breitbart, M.D.
“Upon the filing of a voluntary bankruptcy petition, all property which a debtor owns or subsequently acquires, including a cause of action, vests in the bankruptcy estate (see, 11 USC § 541 [a] [1], [7]; Schepmoes v Hilles, [122 AD2d 35,] supra, at 36). Unless the debtor’s property is listed in the schedule of assets filed with the court or otherwise deemed abandoned, title remains in the estate (see, 11 USC § 554 [d]).” (DeLarco v De-Witt, 136 AD2d 406, 408 [3d Dept 1988] [emphasis supplied].)
Unless relieved of the failure to list a claim in the schedule of assets filed with the court, a debtor may be precluded from prosecuting same, thereby providing a tortfeasor and its insurer with an unexpected and dispositive means to avoid a determination on the matter’s merits. (See, Robinson v Wiertel Constr., 185 AD2d 664 [4th Dept 1992].)
“The trustee of the estate of the bankrupt is vested with title to all of the bankrupt’s property as of the date of the filing of the petition, including rights and choses in action existing at that time (see, 11 USC § 541 [a] [1]; Weiss v Goldfeder, 201 AD2d 644, 645). The trustee, however, may elect to abandon assets of the bankrupt and, following abandonment, title re-vests in the bankrupt (see, Scharmer v Carrollton Mfg. Co., 525 F2d 95, 98).” (Bromley v Fleet Bank, 240 AD2d 611.)
The requirement that a victim of medical malpractice must list, under penalty of preclusion, the corresponding claim as an asset in a bankruptcy proceeding initiated during the pendency of ongoing care is most difficult to reconcile with remedial function to be served by the adoption of the “continuous treatment doctrine.”
“Under that rule, the time in which to bring a malpractice action is stayed ‘when the course of treatment which includes *805 the wrongful acts or omissions has run continuously and is related to the same original condition or complaint’ (Borgia v City of New York, 12 NY2d 151, 155).” (McDermott v Torre, 56 NY2d 399, 405.) .
“The purpose of this doctrine is to ameliorate the harshness of a rule which ties accrual of a malpractice action to the date of the offending act (Lillich, Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Cornell LQ 339, 361), thereby creating a dilemma for the patient, who must choose between silently accepting continued corrective treatment from the offending physician, with the risk that his claim will be time-barred or promptly instituting an action, with the risk that the physician-patient relationship will be destroyed.” (Rizk v Cohen, 73 NY2d 98, 104.)
“The policy underlying the continuous treatment doctrine seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure (see Borgia v City of New York, supra). Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so.” (McDermott v Torre, supra, at 408.)
To require a patient to forego the benefits afforded under the Bankruptcy Code or risk the rupture of the physician-patient relationship as a natural consequence of compliance with the relevant claim listing requirements is not only to insist upon a Hobson’s choice, but to harken back to the days preceding the adoption of the enlightened and remedial doctrine.
In light of this dichotomy, the court directs the plaintiff to expedite the presentation of a formal application to reopen the bankruptcy proceeding and afford the trustee, if such application is granted, an opportunity to consider pursuit of the claim in a representative capacity (see, Scribner v Harvey, 245 AD2d 1120) or knowing waiver and abandonment thereof.
If abandoned, title to the cause of action would revest in the bankrupt. (See, Bromley v Fleet Bank, supra.)
In the event the bankruptcy proceeding is reopened, and the trustee elects to pursue the claim, he or she would receive the benefit of the six-month extension embodied within CPLR 205. (See, Pinto v Ancona, 262 AD2d 472.)