■ TRANSPORT WORKERS UNION OF AMERICA LOCAL 100 AFL-CIO et al., Appellants, v ALAN G. SCHWARTZ et al., Respondents, et al., Defendants. (Action No. 1.) TRANSPORT WORKERS UNION OF AMERICA LOCAL 100 AFL-CIO et al., Appellants-Respondents, v RICHARD L. O'HARA, Respondent-Appellant. (Action No. 2.) [821 NYS2d 53]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered March 18, 2005, which, in the above-entitled Action No. 1, insofar as appealed from, granted the motion by defendants Alan G. Schwartz, Glen Allen Associates, Ltd. and Glen Equities, Ltd. for summary judgment dismissing the first, second and fourth causes of action of plaintiffs' first amended complaint, unanimously affirmed, without costs. Order, same court and Justice, entered April 4, 2005, which, in the above-entitled Action No. 2, insofar as appealed and cross-appealed from, granted defendant Richard L. O'Hara's motion for summary judgment to the extent of dismissing the first and second causes of action of plaintiffs' complaint, and denied the motion to the extent it sought dismissal of the fourth cause of action, unanimously modified, on the law, to further grant O'Hara summary judgment dismissing the fourth cause of action insofar as it is asserted by plaintiff 80 W.E.T.H. Corp., and otherwise affirmed, without costs.

On February 21, 1985, plaintiff Transport Workers Union of America Local 100 AFL-CIO (collectively, with its coplaintiffs, TWU) entered into a final agreement to sell its real property at 1980 Broadway in Manhattan to Stephen M. Ross, in exchange for consideration (comprising cash and another building, 80 West End Avenue) worth $13.5 million. This transaction (the Exchange Transaction) closed on March 12, 1985. The real property portion of the Exchange Transaction was structured as an exchange between TWU and Ross of the stock of the corporate entities that respectively held title to the two buildings. Thus,

at the close of the Exchange Transaction, TWU owned the stock of plaintiff 80 W.E.T.H. Corp. (80 WETH), which held title to 80 West End Avenue, and Ross owned the stock of the entity that held title to 1980 Broadway.

The real estate broker who represented TWU in the Exchange Transaction was defendant Alan G. Schwartz of the brokerage firm of Sylvan Lawrence Company, Inc. (SLC). Shortly before the Exchange Transaction closed, Schwartz resigned from SLC and started a new brokerage firm of his own, defendant Glen Allen Associates, Ltd. (Glen Allen). Upon the closing of the Exchange Transaction, 80 WETH and Glen Allen entered into an agreement for Glen Allen to serve as the exclusive leasing agent for 80 West End Avenue. Subsequently, Glen Allen was replaced as leasing agent by another entity controlled by Schwartz, defendant Glen Equities, Ltd. (Glen Equities). Ultimately, Schwartz acted as the exclusive leasing agent for 80 West End Avenue, first through Glen Allen and then through Glen Equities, from the closing of the Exchange Transaction until June 2000. During this period, Schwartz and his two entities represented 80 WETH in a number of transactions involving the leasing of space in 80 West End Avenue, and in 80 WETH's sale and subsequent repurchase of a condominium unit in the building.

In May 1985, a few weeks after the Exchange Transaction closed, Ross agreed to sell 1980 Broadway to the American Broadcasting Company (ABC), and the sale of the building to ABC closed later that year. TWU contends that, in 2001, it learned for the first time that ABC agreed to pay Ross $29 million for 1980 Broadway, which was more than twice the $13.5 million that Ross had paid TWU for the same property only weeks before. TWU further contends that it also first learned in 2001 that, in a letter dated February 21, 1985 (the same date as that of the final agreement between TWU and Ross), Ross agreed to pay Glen Allen, Schwartz's new company, a fee of $200,000 for unspecified "consulting" services, plus an additional $50,000 "[i]f the ABC deal goes through."

In 2003, TWU commenced the above-captioned Action No. 1 (the *Schwartz* Action) against Schwartz, Glen Allen and Glen Equities (collectively, the Schwartz defendants), as well as SLC and Ross (against whom the action has since been discontinued). In the course of litigating the *Schwartz* Action, TWU learned from SLC that Richard L. O'Hara, Esq., the attorney who had represented TWU in the Exchange Transaction, had entered into a letter agreement with the president of SLC, dated February 25, 1985, under which SLC agreed to remit $100,000 of its

$420,000 commission to O'Hara personally (not his law firm) as "co-broker." TWU, claiming that O'Hara had never disclosed his deal to receive a portion of SLC's brokerage commission, then commenced the above-captioned Action No. 2 against O'Hara (the *O'Hara* Action), also in 2003.

## Appeal in the *Schwartz* Action

In the *Schwartz* Action order under review, the IAS court granted the Schwartz defendants summary judgment dismissing TWU's first cause of action (breach of fiduciary duty), its second cause of action (breach of contract), and its fourth cause of action (constructive fraud). Each of these causes of action was dismissed on the basis of the statute of limitations.

On appeal, TWU recognizes that the three causes of action at issue do not benefit from the discovery accrual rule of CPLR 203 (g) and 213 (8).[1] Instead, TWU argues that, under the continuous representation doctrine, the applicable statute of limitations did not begin to run on the claims for breach of fiduciary duty and constructive fraud until June 2000, when TWU terminated Schwartz as its exclusive leasing agent for 80 West End Avenue. With regard to the cause of action for breach of contract, TWU argues that the Schwartz defendants are equitably estopped to assert the statute of limitations. For the reasons discussed below, these arguments are unavailing.

The continuous representation doctrine tolls the running of the statute of limitations on a cause of action against a professional defendant only so long as the defendant continues to represent the plaintiff "in connection with the particular transaction which is the subject of the action and not merely during the continuation of a general professional relationship" (*Zaref v Berk & Michaels*, 192 AD2d 346, 348 [1993] [citations omitted]; *see also CLP Leasing Co., LP v Nessen*, 12 AD3d 226 [2004]; *Dignelli v Berman*, 293 AD2d 565, 566 [2002]). Here, the evidence developed through discovery establishes that the Schwartz defendants' representation of TWU subsequent to March 1985 was not substantially related to the transaction giving rise to the instant lawsuit, namely, the Exchange Transaction. Rather, the record establishes that the Schwartz defendants' representation of TWU (or, to be more precise, 80 WETH) after the Exchange Transaction "related to a series of discrete and severable transactions" (*Parlato v Equitable Life Assur. Socy. of U.S.*, 299 AD2d 108, 115 [2002], *lv denied* 99 NY2d 508 [2003]; *cf.*

---

1. We note that TWU's cause of action for actual fraud against the Schwartz defendants (to which the discovery accrual rule would apply) is not at issue on this appeal. We express no opinion on whether that cause of action has been timely asserted.

*Williamson v PricewaterhouseCoopers LLP*, 32 AD3d 179 [2006]), namely, deals for the leasing, sale or repurchase of space in the 80 West End Avenue building.[2] That TWU had acquired 80 West End Avenue in the Exchange Transaction constitutes nothing more than an "incidental . . . connect[ion]" (*Dignelli v Berman*, 293 AD2d at 565) insufficient to warrant application of the continuous representation doctrine. Accordingly, the causes of action for breach of fiduciary duty and constructive fraud were long time-barred when this action was commenced in 2003, 18 years after the Exchange Transaction closed.[3]

We also reject the argument that the Schwartz defendants are equitably estopped to assert the statute of limitations as a defense to TWU's cause of action for breach of contract. It is true that equitable estoppel may bar a defendant's assertion of the statute of limitations "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (*Simcuski v Saeli*, 44 NY2d 442, 449 [1978]). Equitable estoppel does not apply, however, where the misrepresentation or act of concealment underlying the estoppel claim is the same act forming the basis of the underlying substantive cause of action (*see Rizk v Cohen*, 73 NY2d 98, 105-106 [1989]). Here, the only basis for an estoppel offered by TWU is Schwartz's testimony that, in February 1985 (before the closing of the TWU-Ross transaction), he told TWU's president that he (Schwartz) was entering into an engagement with Ross to work on "new development opportunities" that were "unrelated" to the Exchange Transaction. This deception, if it occurred, is one of the acts forming the basis of TWU's breach of contract claim, namely, Schwartz's failure to fully disclose, and obtain TWU's consent to, his personal deal to receive a substantial fee from Ross that would be increased in the event of the consummation of Ross's deal to sell 1980 Broadway to ABC. Accordingly, the Schwartz defendants are not estopped to assert the statute of limitations as a defense to TWU's cause of action for breach of

---

**2.** To the extent the sale of the condominium unit, which closed no later than 1987, can be deemed to relate to the Exchange Transaction (for reasons discussed in footnote 6 below), that transaction occurred too long ago to save the causes of action at issue, given that this action was not commenced until 2003.

**3.** Given the length of time between the accrual of the claim and the commencement of this action, we need not address whether the constructive fraud cause of action is governed by the three-year or the six-year statute of limitations. We note that the breach of fiduciary duty cause of action, which seeks monetary relief, is governed by the three-year statute of limitations (*see Carlingford Ctr. Point Assoc. v MR Realty Assoc.*, 4 AD3d 179, 180 [2004]).

contract. Since this cause of action accrued in 1985, the applicable six-year statute of limitations expired long before TWU commenced this action in 2003.

Finally, our decision on the prior appeal in this case (17 AD3d 218 [2005]) held only that TWU's complaint in the *Schwartz* Action sufficiently alleged the applicability of the doctrines of continuous representation and equitable estoppel to avoid dismissal on statute-of-limitations grounds at the pleading stage. That decision does not constitute law of the case with respect to the different question presented by this appeal, namely, whether the record that has been developed after discovery affords sufficient evidence to raise a triable issue as to the applicability of these doctrines (*see Riddick v City of New York*, 4 AD3d 242, 245 [2004]).

Appeal in the *O'Hara* Action

The theory of TWU's case against O'Hara, its attorney in the Exchange Transaction, is that O'Hara failed to disclose to TWU that he would be receiving $100,000 of SLC's brokerage fee. According to TWU, O'Hara's expectation of this payment compromised his loyalty to TWU by giving him an interest in seeing the Exchange Transaction consummated, whether or not the deal was truly in TWU's interest. O'Hara, for his part, testified that, prior to entering into the deal with SLC, he orally disclosed it to TWU's then-president, the late John Lawe, and that Lawe gave his consent to the deal, which, O'Hara claims, was meant to relieve TWU of the burden of some of O'Hara's legal fees. Significantly, as previously noted, the payment in question went to O'Hara personally, not his law firm, and it is undisputed that the invoices O'Hara's firm sent to TWU do not reflect any reduction of the amount due on account of O'Hara's arrangement with SLC. As the IAS court correctly concluded, O'Hara's self-interested testimony, which is not corroborated either by documentary evidence or by the testimony of any other witness, does not provide a basis for granting him summary judgment.

The IAS court did, however, grant O'Hara's summary judgment motion to the extent of dismissing, on statute-of-limitations grounds, TWU's first and second causes of action against O'Hara, both of which are for breach of fiduciary duty.[4] This determination was correct. Here, as in the *Schwartz* Action, TWU, recognizing that the discovery accrual rule does not apply to causes of action for breach of fiduciary duty, relies on the continuous representation doctrine to save its first and

---

4. The first cause of action against O'Hara seeks damages, and the second seeks disgorgement of fees and commissions.

second causes of action. Such reliance is unavailing. It is true that O'Hara continued until 2001 to represent TWU in real estate matters and certain labor matters (specifically, those labor matters relating to private bus lines in Queens). The record establishes, however, that O'Hara's representation of TWU on matters substantially related to the Exchange Transaction ended no later than 1987, when a dispute arguably related to the Exchange Transaction was finally settled.[5] Thereafter, while O'Hara's "general professional relationship" (*Zaref*, 192 AD2d at 348) with TWU continued until 2001, his post-1987 representation of TWU concerned matters not substantially related to the Exchange Transaction, and therefore does not warrant application of the continuous representation doctrine (*see Dignelli*, 293 AD2d at 566). We note that it is undisputed that O'Hara and his law firm did not serve as TWU's general outside counsel during the period in question, except for a brief period in 1995-1996, by which time the claims in question would have been time-barred.[6]

Finally, O'Hara cross-appeals from the IAS court's denial of his summary judgment motion to the extent it sought dismissal of TWU's fourth cause of action, for actual fraud. This determination, based on the application of the discovery accrual rule, was also correct. At the outset, we note that this appeal does not present, and we therefore do not address, the question of when TWU had information from which Schwartz's alleged fraud in the Exchange Transaction "could with reasonable diligence have [been] discovered" (CPLR 213 [8]). However, even if it is assumed that TWU could have discovered its potential claim against Schwartz in 1985 or 1986 (when TWU became aware that Ross had sold 1980 Broadway to ABC), O'Hara

---

**5.** The dispute concerned an option, which TWU had granted Ross in the Exchange Transaction, to purchase certain space in the 80 West End Avenue building as a condominium. In 1985, TWU and 80 WETH, represented by O'Hara and his firm, commenced a lawsuit against ABC and Ross, seeking to have Ross's transfer of the option to ABC declared invalid. The lawsuit was settled in 1986, and, pursuant to the settlement agreement, TWU's sale of the space in question to ABC closed in 1987.

**6.** In arguing for application of the continuous representation doctrine, TWU also relies on allegations that O'Hara was 80 WETH's legal counsel on all real estate matters from 1985 through 2001, and that O'Hara was a corporate officer of 80 WETH during that period (although the record reflects only that he was elected 80 WETH's assistant secretary in 1999). On this appeal, these matters are of no moment. This is because 80 WETH, which owned 80 West End Avenue before and after the closing of the Exchange Transaction, and has never had any interest in 1980 Broadway, does not have any viable claim against O'Hara based on the matters alleged in this lawsuit, so far as can be discerned from the record.

points to nothing in the record establishing, as a matter of law, that TWU was on notice of his agreement to receive $100,000 of SLC's brokerage fee in the Exchange Transaction. Thus, it cannot be said that, as a matter of law, TWU could have discovered its claim against O'Hara more than two years before it commenced its action against him. However, we modify to dismiss the actual fraud cause of action insofar as asserted by plaintiff 80 WETH, since, as previously indicated, so far as we can discern from the record, 80 WETH has no viable fraud against O'Hara based on the matters alleged in this action. Concur—Tom, J.P., Friedman, Nardelli, Sweeny and Malone, JJ.