MANSMANN, Circuit Judge,
concurring in part, and concurring in the result in part.
I am pleased to join with my colleagues in Part III of the majority opinion, which recognizes that an ERISA fiduciary who has created confusion about rights under a benefit plan has an ongoing responsibility for harm stemming from beneficiaries’ decisions attributable to that confusion. While I also agree with the holding in Part II of the majority opinion that summary judgment must be reversed, I am unable to subscribe to the reasoning of that Part II because it threatens to undercut a fiduciary’s responsibility by allowing a safe harbor so long as the breaching fiduciary arranges to keep the beneficiaries in the dark for six years after they rely on his misrepresentations. I believe that the majority’s analysis of the statute of limitations affords too little protection for trusting workers by using an artificial notion of detriment to start the statutory period, by disregarding the fiduciary’s ongoing obligation to correct known misunderstanding, and by effectively writing out of the statute the doctrine of tolling until discovery of a self-concealing wrong.[1]
*511 I.
The applicable statute of limitations requires that claims be brought within six years of the “date of the last action which constituted a part of the breach or violation.” 29 U.S.C. § 1113(1)(A). As the majority acknowledges, the “last action” necessary to make out the claims at issue is detrimental reliance. See Opinion at 505-06 (referring to material misrepresentation and detrimental reliance as elements) (quoting Adams v. Freedom Forge Corp., 204 F.3d 475, 492 (3d Cir.2000)). See also Unisys II, 57 F.3d at 1265 (defining elements of claim for fiduciary breach as (1) proof of fiduciary status, (2) misrepresentations, (3) company knowledge of confusion, and (4) resulting harm).[2]
The majority reasons, essentially, that the breach of duty by Unisys was its misrepresentation of the plan’s provisions, and the detriment or “resulting harm” to the participants was their retirement without the protection of a guarantee. See Opinion at 505-06. This effectively reads the element of harm or detriment out of the claim. Although the retirement decisions were made in reliance, such reliance did not become detrimental until Unisys announced termination of the promised post-retirement medical benefits. If the benefits had continued, there would have been no injury. Cf. Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (“A claim is not ripe for adjudication if it rests upon ‘contingent future events that may not occur as anticipated, or indeed may not occur at all.’ ”) (quoting Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580-81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Here, resulting harm was contingent on the company’s future conduct.
The majority argues that actual harm is not a necessary element of a claim for breach of fiduciary duty. While that may be correct as a general proposition, it is incorrect as applied to the subset of fiduciary claims predicated on detrimental reliance. “Actual harm” and “detriment” appear to be synonymous. To the extent that there may be a difference between legal detriment and actual harm, only the latter .should start the clock running for the statute of limitations. The significance of harm in the limitations context is that it brings the existence of the claim home to the claimant so that he may reasonably be expected to act. This purpose is not well served by a technical notion of “detriment” that does not actually impact the claimant.[3]
The majority illustrates its view of detriment by hypothesizing that an employee who “sought counsel” and took early retirement based on the company’s assurance of lifetime health care could “surely” bring suit immediately and secure rescission of her retirement or other appropriate equitable relief.[4] Opinion at 505-506. *512 However, the question of what actual or prospective harm is sufficient to allow suit by one apprized of her rights is not before us.[5] To my view, a more apt hypothetical concerns whether the estate of a participant who died before the old plan was terminated, and so received the promised medical benefits for life, would nevertheless be able to sue for breach of fiduciary duty because the promised benefits, though paid, had not been sufficiently assured by the written plan? Surely not. The claim would fail due to the absence of actual injury. Thus, while I am not prepared to say that a retiree may never bring suit prior to enactment of a threatened detrimental change, I do not believe that the statute of limitations requires her to bring a preemptive action to ward off potential harm that might never occur.
Accordingly, I would hold that the “last action which constituted a part of the breach” for statute of limitation purposes was the termination of the medical benefits that Unisys had assured the retirees they would receive for life, rather than any particular decisions the retirees made on the strength of that assurance.[6]
II.
Even if our statute of limitations analysis were limited to fiduciary conduct by Unisys, the retirees’ claims still should not be barred on the present record, as there is evidence that Unisys continued to breach its duty by failing to correct the mistaken beliefs that its prior misstatements created. Because this continuing breach involved an omission rather than an act, the six-year limitations period would not commence until “the latest date on which the fiduciary could have cured the breach or violation”. 29 U.S.C. § 1113(1)(B).
As the majority observes, we have previously recognized that a fiduciary has a “duty to deal fairly with its beneficiary and, more specifically, ‘to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection.’ ” Supra at 509, quoting Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir.1993).[7] Here, the evidence suggests that Unisys breached this duty continuously from the time it first misrepresented the terms of *513 the plan until the time the beneficiaries learned the material facts by receiving notice of the plan termination. Under the majority’s holding, the beneficiaries’ interests were not protected by the fiduciary’s word, but could only be protected if they brought suit within six years. They therefore “needed to know for their protection” that the plan was not as it had been represented; and as the majority acknowledges in Part III of its opinion, there is evidence that Unisys knew that the employees were unaware of the material facts.
Unisys therefore had an ongoing duty to inform the participants of the true state of affairs. As long as Unisys had reason to believe that the retirees remained unaware of the material fact that the company retained a right to cut off their “lifetime” medical benefits, it was a violation of trust (i.e., a breach of fiduciary duty) every day for Unisys not to inform them.[8] See Adams, 204 F.3d at 493-94 (“[Bjecause Unisys was aware that it retained the right to modify, a knowing failure to clarify the material information about the retention of power was breach of its fiduciary duty.”).
Had Unisys told plaintiffs the truth, they could have acted to protect themselves. Cf. Harte v. Bethlehem Steel Corp., 214 F.3d 446, 448 (3d Cir.2000) (holding that where beneficiaries might predictably and reasonably rely on a misinterpretation of a plan provision, “a fiduciary may be held liable for failing to inform a beneficiary” of his rights “in a timely manner ... (so that he might attempt to protect himself).”). Consequently, the participants and beneficiaries should be permitted to prove that they relied to their detriment on Unisys’s continuing non-disclosure, by refraining from bringing the present suit until after the omitted information was supplied.
Recognition of an ongoing duty to correct prior misstatements entails that the statute of limitations does not run while a misstatement remains uncorrected.[9] Conversely, the majority’s holding that the statute runs from the date of retirement amounts to absolving the fiduciary from any ongoing duty to correct the misstatement. Today’s holding is therefore contrary to our decisions in Bixler and Harte.
III.
The most troubling aspect of the majority opinion is its treatment of the self-concealing wrong issue. As the majority observes, in Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1552 (3d Cir.1996) we “expressly reserved the issue, elsewhere debated, of ‘whether § [1113]’s six year period extends to both “self-concealing” wrongs as well as “active concealment” separate from the underlying wrongdoing.’ ” Supra at 502-503. Although the majority does not expressly state whether its opinion is meant to address that issue, its requirement of “affirmative steps to conceal beyond the misrepresentations themselves” in order to toll the statute, supra at 503 n. 5, amounts to an outright rejection of the self-concealing wrong doctrine. A requirement of additional conduct beyond the breach itself is fundamentally at odds with the concept that a wrong may be seif-concealing.
*514 I believe that the majority errs in interposing an additional requirement of an affirmative act of concealment on self-concealing wrongs. In so holding, it permits the ERISA statute of limitations to become an instrument to immunize fiduciary wrongdoing.
The “fraud or concealment” provision incorporates the long-established principle of federal common law that a statute of limitations is tolled until discovery of the wrong where there is either underlying fraud or separate acts to conceal wrongdoing.[10] As the Seventh Circuit has explained,
The reading we adopt ... interprets the phrase “fraud or concealment” in a way that gives both terms meaning. An ERISA fiduciary can delay a wronged beneficiary’s discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary never becomes aware of them (concealment).
... [T]his interpretation of “fraud or concealment” harmonizes the phrase’s meaning with the widely known doctrine of fraudulent concealment, which tolls the running of a statute of limitations when the defendant has prevented the plaintiffs timely discovery of the wrong she has suffered.
Radiology Ctr., S.C. v. Stifel, Nicolaus & Co., 919 F.2d 1216, 1220 (7th Cir.1990). See also Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1552 (3d Cir.1996) (observing that § 1113 “does not protect defendants in instances involving concealment or fraud”) (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir.1992)) (emphasis added).
The majority misinterprets our decision in Kurz as holding that even where concealing acts occur in the course of the underlying breach, “there must be conduct beyond the breach itself that has the effect of concealing the breach from its victims.” Supra at 503. On the contrary, in Kurz, we expressly distinguished “self-concealing wrongs” from “ ‘active concealment’ separate from underlying wrong”. Id. at 1552 n. 5.[11]
This case is not like Kurz. There was no occasion to address the effect of a self-concealing wrong there, because there was no concealment. Indeed, we observed in Kurz that the employer’s announcement of the amendment at issue just 35 days after the alleged misrepresentation “exempli-fie[d] the type of timely notification that companies should give their employees”, and “foreclosed any suggestion that [the employer] attempted to conceal its plans or engaged in a campaign of fraud to prevent the plaintiff class from suing for the alleged breach”. 96 F.3d at 1552. In the present case, in contrast, the company’s conduct was far from exemplary, as it engaged in a “systematic campaign of confusion.” In re Unisys Corp. Retiree Medical Benefits ERISA Litigation, 1994 WL 284079 at 33 (E.D.Pa. June 24, 1994); see also In re: Unisys Corp. Retiree Medical Benefits ERISA Litigation, 1996 WL 455968 at *4-6 (discussing sufficiency of evidence of systematic misrepresentation *515 and confusion in reinstating claims of Burroughs and Unisys plaintiffs). As discussed above, one effect of the resultant confusion was to mislead beneficiaries into believing they had no need or cause to sue.[12] Consequently here, unlike in Kurz, it is necessary to consider the effect of such self-concealing misconduct on ERISA’s statute of limitations.
The rationale underlying the self-concealing wrong doctrine has long been recognized in our law:
To hold that ... by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure.
Bailey v. Glover, 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874). This principle that the law should not reward concealment is particularly applicable in the context of a fiduciary relationship. See Amen v. Black, 234 F.2d 12, 26 (10th Cir.1956) (“The law does not require one to suspect his fiduciary. Surely no one would contend that the ... statute of limitations was intended to impose upon the defrauded party the burden of discovering a fraud perpetrated by one standing in a position of trust.”).[13]
If ever a case calls for application of the self-concealing wrong doctrine, this is such a case. Considering the facts in the light most favorable to the participants, as the party opposing summary judgment: Uni-sys purposely systematically misled its workers into believing that they had a legally protected right to medical benefits for life;[14] it perpetuated the misinformation by repeating its misstatements to many employees over a period of year^;[15] and it avoided any action that would have brought the misrepresentation to the participants’ attention, by paying the benefits until after the statutory period had passed.
Thus, Unisys’s conduct may be distinguished from a garden-variety fiduciary breach by two important factors: first, the beneficiaries were deceived, and remained so, to Unisys’s knowledge, for several years, until shortly before suit was filed; and second, the deception was procured by a systematic course of repeated misrepresentations calculated to prevent the entire class of aggrieved retirees from learning the truth. I believe this amounts to a self- *516 concealing wrong, sufficient to toll the statute without regard to “additional” conduct — such as telling retirees that the reservation of rights in the SPD did not apply to them-which the majority properly finds sufficient to create a triable issue of concealment.[16]
The majority gives great weight to Uni-sys’s distribution of a Summary Plan Description with a reservation of rights clause. Any implication that there can be no concealment where an accurate SPD is provided is inconsistent with our cases holding that participants can be misled despite an accurate SPD, and that a fiduciary should not be permitted to prey upon the participants’ foreseeable confusion.[17] Moreover, it is inconsistent with the majority’s own recognition of evidence that, “despite the existence of the SPD”, employees had “the mistaken belief that then-health benefits were guaranteed for life.” Supra at 509.[18]
In sum, this case involves systematic conduct by Unisys that foreseeably led participants and beneficiaries to believe that they did not have a claim.[19] That the concealing acts were woven into the fabric of Unisys’s initial wrongdoing should be of no moment. Accordingly, I concur with the majority’s holding that the plaintiffs have established at least a triable issue as to whether this is a case of “fraud or concealment”, so that the statute of limitations would only begin to run upon discovery of the breach.

. Part II of the majority opinion contemplates entry of summary judgment against retirees whose claims (i) are based solely on retirement decisions made more than six years before this action was filed, and (ii) were not concealed by Unisys's advice. It is not clear that any actual person’s claim will meet these criteria, however. As the majority recognizes, retirees may rely on the presence of medical coverage in making many of life's decisions beyond the decision to retire. Most people probably take such vital background— financial circumstances into consideration, at least tacitly, in everything that they do. Moreover, as explained below, I believe that all of these participants and beneficiaries detrimentally relied on Unisys’s ongoing improper omission to correct its misrepresentations in declining to sue before they ultimately brought this action.
In light of the wide scope of Unisys’s alleged concealment, and the potentially pervasive presence of acts of reliance beyond the retirement decision, my disagreement with Part II of the majority's analysis may be no more than theoretical, as it may well be that no claims at issue are "based solely on retirement decisions”, and that all claims fall with *511 in the saving provisions of Part II.A or Part III.

. We recently observed that construction of ERISA’s six-year statute “implicates sophisticated questions about whether the statute begins to run at the date of the misrepresentations, the date of the plan amendment, or some other date”. Adams, 204 F.3d at 494 n. 19. As will appear, I believe it runs from the date of the detrimental amendment, while the majority believes it runs from "some other date" — viz., the date of the last act undertaken in reliance on the misrepresentations.

. Moreover, cases holding that it is not necessary to demonstrate harm to establish a breach of fiduciary duty do not stand for the proposition that harm, where present, is not part of the breach. See Adams, 204 F.3d 475, 492 (3d Cir.2000). Fiduciary conduct is measured in light of all the attendant circumstances. There is a qualitative difference between an act by a fiduciary which falls short of the standard imposed by law and an act that also injures cestui que trust. Consequently, even a "non-fiduciary” act by the company which imposes injury on a beneficiary left vulnerable by a prior fiduciary breach becomes "part of the breach,” and worsens it character. Thus, the "last action” could consist in the imposition of harm where it is part of the fiduciary breach, even if it were not a required element.

.Although the question of remedy is not now before us, the majority’s reference to rescission as an illustrative remedy is significant. As the majority recognizes in Part III, partici *512 pants may rely on their misapprehension of the plan benefits in many ways beyond deciding to retire. Some of these acts of reliance— those involving expenditures or commitments made in expectation of a stronger — financial position-would be difficult to rescind, and rescission would not make the participant whole. So in general the rescission remedy may be unwieldy and inadequate. This follows from the majority’s unrealistic assumption that the decisions themselves constitute the detriment to be redressed; whereas, actually the harm to be remedied is the unexpected withdrawal of promised benefits.
If instead of assuming that the object of a suit is to undo the retiree's life decisions, we recognize that the paradigmatic remedy may be enforcement of the promise on which the participants relied, then it becomes clear that the injury that triggers the suit results from the fiduciary's failure to comply with the promise, rather than from the employee's decision to retire. Cf. Unisys II, 57 F.3d at 1269 (indicating that "an injunction ordering specific performance of the assurances Unisys made” is an equitable remedy available under 29 U.S.C. § 1132(a)(3)).

. That question concerns the requirement that we may only decide cases and controversies, and so turns on different policies from those underlying the statute of limitations.

. I disagree with the majority's statement that it is merely "fortuitous” that the fiduciary that misrepresented the permanency of the benefits is the same entity that ultimately cut off those benefits. To the contrary, it was the ability of Unisys to honor its promises that helped to induce the retirees' reliance and created a real prospect that they would not be injured.

. Indeed, “[t]he duty to disclose material information is the core of a fiduciaiy’s responsibility.” Harte v. Bethlehem Steel Corp., 214 F.3d 446, 452 (3d Cir.2000) (quoting Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1182 (3d Cir.1996)).

. As the majority recognizes, "a duty to advise affirmatively of the reservation of rights clause might have arisen even in the absence of beneficiary-specific information of confusion or mistake” where the fiduciary has “acquired knowledge of confusion so pervasive that a reasonable fiduciary would have done more than simply rely on its SPD.” Supra at 509 (citing Unisys II, 57 F.3d at 1266). This duty is independent of the reasonableness of, or even the reasons for, the misapprehension.

. It might be objected that recognition of an ongoing duty would result in an open-ended statute of limitations. However, I believe that it is entirely consistent with public policy and the federal common law embodied in the “fraud or concealment exception” to hold that a fiduciary who has misled his beneficiary may never seek refuge behind the statute of limitations as long as he allows the deception to continue unabated.

. The effect of the majority’s requirement of additional acts of concealment even in cases of self-concealing fraud is to allow tolling only in cases of concealment, and so to write the fraud alternative out of the statutory exception.

. See also Bailey v. Glover, 88 U.S. (21 Wall.) 342, 349-50, 22 L.Ed. 636 (1874) (distinguishing between a fraud which "has been concealed” and one which "is of such character as to conceal itself”). Indeed, the majority opinion expressly acknowledges this distinction: "In this context, 'a self-concealing act is an act committed during the course of the original fraud that has the effect of concealing the fraud from its victims, [while ajctive concealment refers to acts intended to conceal the original fraud that are distinct from the original fraud.' Wolin v. Smith Barney, Inc., 83 F.3d 847, 852 (7th Cir.1996).” Supra at 503. Nevertheless, it proceeds to conflate the two concepts by requiring acts distinct from the original breach even where concealment occurs in the course of the underlying breach. See supra at 502-503.

. See Barker v. American Mobil Power Corp., 64 F.3d 1397, 1402 (9th Cir.1995) (fraudulent concealment involves "affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief”). Cf. Lettrich v. J.C. Penney Co., Inc., 213 F.3d 765 (3d Cir.2000) (holding placement of amendment notice within technical document and failure to use more effective channels would support inference that employer intended to conceal amendment from affected employees).

. Congress enacted ERISA to “protect ... the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility and obligation for fiduciaries.” 29 U.S.C. § 1001(b). ERISA should therefore be applied to avoid results that "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted.” Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1257 (3d Cir.1993). Enabling fiduciaries to secure immunity for their self-concealing misrepresentations by lapse of time would violate this principle.

. See Unisys II, 57 F.3d at 1266 (noting that the District Court "found that the company, both actively and affirmatively, systematically misinformed its employees about the duration of their benefits”).

. See Unisys II, 57 F.3d at 1265 ("Here the district court found that virtually the entire company management had consistently misrepresented the plan, not just on one occasion to one employee, but over a period of many years and both orally (in group meetings) and in writing (in newsletters) as well.”). I disagree with the majority's offhand remark that mere repetition of a misrepresentation cannot constitute concealment — especially in the present context, where the misrepresentation was repeated to all and sundry, creating pervasive misunderstanding. It seems clear that consistent repetition of a falsehood to all employees would well serve to prevent the truth from becoming known.

. I agree with the majority’s conclusion that the company's advice that the reservation of rights clause “pertained to active employees and not to retirees” supra at 500, quoting In re Unisys Corp., 1994 WL 284079 at *34, amounts to an affirmative step to conceal the effect of the clause at issue, and thus to conceal the retirees' potential injury. Cf. Adams, 204 F.3d at 492 (finding participants likely to succeed on merits notwithstanding explicit reservation of rights where participants contended that, based on the employer’s communications, they "reasonably believed that the active employees' booklets did not apply to them”).

. See, e.g., Adams, 204 F.3d at 492-93 ("[A] company cannot insulate itself from liability by including unequivocal statements'retaining the right to terminate the plans at any time in the SPDs.[Cjonflicting assertions cannot be ignored because they are not in the formal ERISA document.”); Harte, 214 F.3d at 451 n. 6 ("[T]he fiduciary duty to disclose and explain is not achieved solely by technical compliance with the statutory notice requirements.”); Unisys II, 57 F.3d at 1264 (“[Sjatis-faction ... of ... disclosure obligations [through an SPD] ... does not foreclose the possibility that the plan administrator may nonetheless breach its fiduciary duty ... to communicate candidly, if the plan administrator simultaneously or subsequently makes material misrepresentations to those [to] whom the dut[ies] of loyalty and prudence are owed.”).

. The majority holds that the SPD is but "one of the circumstances that must be considered” on the question of fiduciary breach. Supra at 509. The same must hold true for the role of the SPD on the question of concealment.

. As the majority concludes in Part III of its opinion, "there was evidence from which a trier of fact could conclude that Unisys should have foreseen that its conduct ... would cause reasonable employees to rely to their detriment, despite the existence of the SPD.” Supra at 508. By the same token, a factfinder could conclude that Unisys's conduct would cause those employees "to believe that [they] did not have a claim for relief” — which is the essential characteristic of concealment. Barker, 64 F.3d at 1402.